**HEALTH COST CONTROLS, Plaintiff,**

v.

**Nicolina ROGERS and Brian Rogers, Defendants.**

**No. 94 C 167.**

United States District Court, N.D. Illinois, Eastern Division.

Aug. 30, 1994.

David Alan Belofsky, James John Merriman, David A. Belofsky & Associates, Chicago, IL, Christopher J. Michas, John O. Demaret & Associates, Northbrook, IL, for plaintiff.

Nicholas E. Liontakis, Olympia Fields, IL, for defendants.

### MEMORANDUM OPINION

GRADY, District Judge.

The parties have filed cross-motions for summary judgment. For the reasons stated in this opinion, the court denies defendants' motion and grants summary judgment in favor of plaintiff.

### BACKGROUND

This lawsuit seeks enforcement of the terms of an employee benefit plan regulated by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* Plaintiff Health Cost Controls ("HCC") administers a self-funded health care plan ("the Plan") that was sponsored and maintained by the employer of defendant Nicolina Rogers ("Nicolina") at a time in 1990 when her son, defendant Brian Rogers ("Brian"), sustained injuries in a traffic accident. At the time of the September 21, 1990, accident, Brian was 15 years old and was eligible for medical benefits under the Plan. The parties do not dispute that the Plan paid $29,978.80 in medical benefits to Brian's health care providers. They do not dispute that Nicolina and Brian brought a negligence action in state court against the driver of the vehicle that struck

Brian, and that the state court action was dismissed on October 22, 1992, as part of a $50,000.00 settlement with the driver and his insurer. The dispute concerns the purely legal question of whether the Plan is entitled to any reimbursement from the settlement monies received by either or both of the defendants.

The Plan contained the following provisions concerning reimbursement:

(3.) RIGHT OF RECOVERY FROM THIRD PARTY

AHCP [HCC's assignor concerning the Plan rights] shall pay benefits for a Member's loss caused or contributed by the acts or omissions of others except to the extent otherwise excluded or limited by the Subscription Certificate. AHCP will, however, have the right to be reimbursed in the event of a recovery from the other parties. Therefore, the Member or anyone acting on his or her behalf agrees:

(A.) To fully cooperate with AHCP in obtaining information about the loss and its cause;

(B.) To notify AHCP of any claim for damages made on behalf of the Member in connection with the loss;

(C.) To include the amount of the benefits paid by AHCP on behalf of the Member in any claim for damages made against the other parties;

(D.) That AHCP:

(i.) shall have a lien on all sums recovered in connection with the loss to the extent of its own payments, and

(ii.) may give notice of that lien to any party who may have contributed to the loss;

(E.) To reimburse AHCP from any funds from these other parties, whether received by settlement, judgment or otherwise;

There will be a pro rata reduction in the amount AHCP is to be reimbursed if:

(1.) There is a judgment in favor of the Member; but,

(2.) The amount of the recovery is reduced because of some fault on the part of the Member.

If the funds from the other parties are recieved [sic] by settlement, the amount AHCP is to be reimbursed will be the lesser of:

(1.) The amount paid by AHCP for the loss; or,

(2.) Fifty per cent (50%) of the settlement.

Answer to First Amended Complaint, Exh. A ("Plan Document") at § 11. Further, the Plan defined "Member" as either the subscriber (the employee who actually enrolled in the Plan) or a family dependent of the subscriber. *Id.* at § 1.

Out of the $50,000.00 settlement from the Rogers' state court lawsuit, $32,968.54 remained after attorneys' fees and costs. On December 8, 1992, HCC demanded reimbursement for the $29,978.80 the Plan had paid in benefits for Brian's medical care. Defendants have refused to reimburse, arguing that Illinois law made Nicolina the responsible party for paying Brian's medical bills, and that although Nicolina was a party to the state court suit, the settlement of that suit benefited only Brian and thus did not confer a double recovery on Nicolina. Defendants also argue that HCC cannot impose a lien on Brian's settlement proceeds because Illinois common law does not give insurers a right of subrogation against the settlement of a tort claim by a minor whose parents are primarily responsible for the minor's medical expenses.

HCC contends that summary judgment should be entered in its favor because ERISA preempts the Illinois common law insofar as that law relates to the Plan in this case. HCC also argues that although the state court settlement may have been structured to benefit Brian only, Nicolina's abandonment of her claim for medical expenses in the state case was in consideration for the payment to Brian. HCC thus argues that Nicolina had at least as much of an obligation as did Brian to see that the Plan was reimbursed under § 11 once the settlement payment was made.

*ANALYSIS*

 The court's jurisdiction is founded upon § 502(a)(3) of ERISA, which allows plan fiduciaries to bring suit to enforce the

terms of a plan. 29 U.S.C. § 1132(a)(3). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact exists only where 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Dribeck Importers, Inc. v. G. Heileman Brewing Co.*, 883 F.2d 569, 573 (7th Cir.1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986)). In considering such a motion, the court must view all inferences in the light most favorable to the nonmoving party. *See Regner v. City of Chicago*, 789 F.2d 534, 536 (7th Cir.1986). In other words, although the district court's role on summary judgment is not to sift through the evidence and decide whom to believe, the court will enter summary judgment against a party who does not come forward with evidence that would reasonably permit a finder of fact to find in his or her favor on a material question. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994).

## I. The Structure of the State Court Settlement Does Not Alter Defendants' Obligation To Reimburse Under the Unambiguous Terms of the Plan.

■ There is no genuine dispute of fact as to the terms of the Plan itself, which refers to the Plan's right to be reimbursed in the event of a "recovery" from third parties who caused the loss. Plan Document at § 11(3). The Plan "member" agrees to reimburse the Plan "from *any* funds received from these other parties; whether received by settlement, judgment, or otherwise." *Id.* at § 11(3)(E) (emphasis added). "Member" includes not only Nicolina, but her 15–year–old son, Brian, as a "family dependent" of Nicolina. *Id.* at §§ 1(3–5), 2(2).

■ The written instrument governing an ERISA-regulated plan is in the nature of a private contract between the parties to the plan. *Land v. Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Health and Welfare Fund*, 25 F.3d 509, 514 (7th Cir.1994). Accordingly, federal courts construe the terms of an ERISA-regulated plan under federal common law rules of contract interpretation, giving unambiguous language its plain and ordinary meaning. *Meredith v. Allsteel, Inc.*, 11 F.3d 1354, 1358 (7th Cir.1993). In this case, the broad language in the Plan Document appears to have been drafted to prevent the very defense to reimbursement that Nicolina and Brian raise. The Plan Document's definition of "member" clearly includes both the subscriber (Nicolina) and the family dependent (Brian). The Plan Document also refers to the obligation of the "member" to reimburse the Plan for "any funds" received from third parties responsible for the covered loss. The plain and ordinary meaning of "any funds" paid to a "member" would necessarily include money paid to compensate Brian for the pain and disability caused by his bodily injuries, as well as money paid to Nicolina to compensate her for the medical expenses. Therefore it does not matter that Nicolina and Brian, through their attorney, structured the settlement of the state court suit to pay the money to Brian only, and to label the payment as being for "bodily injury," rather than for medical expenses. Even if the court accepted defendants' argument that Nicolina abandoned her medical expense claim in exchange for nothing, the Plan remains entitled to reimbursement.

## II. ERISA Pre-empts Illinois' Common Law Bar to Insurers' Right of Subrogation Against the Settlement of Minors' Tort Claims.

■ Summary judgment in favor of defendants would be appropriate if this court were to apply the Illinois common law rule forbidding insurers from exercising a right of subrogation against the settlement of tort claims by minors whose parents are responsible for the minors' medical expenses. *See Estate of Hammond v. Aetna Casualty*, 141 Ill.App.3d 963, 96 Ill.Dec. 270, 272, 491 N.E.2d 84, 86 (1st Dist.1986); *Estate of Woodring v. Liber-*

*ty Mut. Fire Ins. Co.,* 71 Ill.App.3d 158, 27 Ill.Dec. 399, 400, 389 N.E.2d 211, 212 (2d Dist.1979). Illinois courts have reasoned that because the parents are liable by statute for the minor's medical expenses, *see* 750 ILCS 65/15(a)(1), the insurer's payment of those expenses inures to the benefit of the parents and not the minor, so the insurer cannot use subrogation to recover its payments from the estate of the minor, who technically had received no benefit from the insurer. *Estate of Aimone v. State Health Benefit Plan/Equicor,* 248 Ill.App.3d 882, 188 Ill.Dec. 821, 822–23, 619 N.E.2d 185, 186–87 (3d Dist.1993), *appeal denied,* 154 Ill.2d 559, 197 Ill.Dec. 485, 631 N.E.2d 707 (1994).

■ ERISA, however, pre-empts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). ERISA's pre-emption is limited by a "saving clause" that excludes state laws regulating insurance, banking and securities from ERISA's preemptive reach. 29 U.S.C. § 1144(b)(2)(A). This exception to ERISA's pre-emption is limited by the "deemer clause," which provides that an employee benefit plan cannot be "deemed" to be an insurance company for purposes of any state law purporting to regulate insurance. 29 U.S.C. § 1144(b)(2)(B). Together, these statutory provisions have been interpreted to draw an important distinction between employee benefit plans that are self funded versus those that purchase an insurance policy to satisfy their obligations to plan participants. *FMC Corp. v. Holliday,* 498 U.S. 52, 61, 111 S.Ct. 403, 409, 112 L.Ed.2d 356 (1990); *Reilly v. Blue Cross and Blue Shield United,* 846 F.2d 416, 425–26 (7th Cir.), *cert. denied,* 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988). By operation of the deemer clause, a self-funded plan is not "saved" from ERISA's pre-emption of state insurance laws, unlike an ERISA plan insured by an insurance company, which states may regulate indirectly by imposing regulations upon the insurance company. *Holliday,* 498 U.S. at 61, 111 S.Ct. at 409; *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 747, 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728 (1984). Interpreting ERISA to allow indirect state regulation of insured plans but no state regulation of uninsured

plans "merely give[s] life to a distinction created by Congress in the 'deemer clause,' a distinction Congress is aware of and one it has chosen not to alter." *Metropolitan Life,* 471 U.S. at 747, 105 S.Ct. at 2393.

There is no dispute in this case that the plan at issue here is self funded. ERISA therefore pre-empts Illinois' anti-subrogation law as it relates to the Plan's right to reimbursement from beneficiaries who recover from third-party tortfeasors. *Health Cost Controls v. Bode,* No. 93 C 3557, 1994 WL 53783, at *3 (N.D.Ill. Feb. 18, 1994); *Pople v. Cox,* No. 93 C 6274, 1993 WL 469915, at *3–4 (N.D.Ill. Nov. 12, 1993); *General Business Forms, Inc. Employee Health and Dental Care Plan v. Thornburg,* No. 88 C 8549, 1989 WL 103382, at *2–4 (N.D.Ill. Aug. 29, 1989). *See also Serembus ex rel. UIU Health & Welfare Fund v. Mathwig,* 817 F.Supp. 1414, 1420–21 (E.D.Wis.1992) (holding that self-funded ERISA plan escaped Wisconsin antisubrogation rules); *Cutting v. Jerome Foods, Inc.,* 820 F.Supp. 1146, 1150–51 (W.D.Wis. 1991) (same), *aff'd,* 993 F.2d 1293 (7th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 308, 126 L.Ed.2d 255 (1993).

■ All that remains of defendants' position is their argument that the Illinois law concerning subrogation of a minor's estate does not "relate to" the Plan so as to trigger ERISA's pre-emption. A law relates to an employee benefit plan if it has "a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). Congress used the words "relate to" in their broad sense, *id.* at 98, 103 S.Ct. at 2900–01, but did not intend ERISA to have pre-emptive effect where state actions affect a plan in "too tenuous, remote or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Id.* at 100 n. 21, 103 S.Ct. at 2901 n. 21. In *Kelleher v. Hood,* 238 Ill.App.3d 842, 179 Ill.Dec. 4, 605 N.E.2d 1018 (2d Dist. 1992), the Illinois Appellate Court held that where a plan allows reimbursement only from "subscribers who are unlikely to be minors," the Illinois antisubrogation law as articulated in *Hammond* and *Woodring* had "only a tangential impact" on the plan.

*Kelleher,* 179 Ill.Dec. at 11, 605 N.E.2d at 1025. The *Kelleher* court also noted that ERISA is silent with respect to reimbursement and subrogation in ERISA plans, and that *Hammond* and *Woodring* do not directly refer to ERISA or ERISA-regulated plans. *Id.* at 11–12, 605 N.E.2d at 1024–25.

The case at bar is distinguishable from *Kelleher* in at least two important respects. First, *Kelleher* involved an insured plan, rather than a self-funded plan. *Id.* at 11, 605 N.E.2d at 1024. The *Kelleher* court did not decide the issues based on this fact, which, for reasons discussed earlier in this opinion, could have provided a basis for holding that ERISA did not pre-empt Illinois law concerning the *Kelleher* plan. Second, the Plan imposed a reimbursement obligation on "members" of the Plan, with "member" clearly defined as either a subscriber or a family dependent. Unlike the *Kelleher* plan, the plan here made clear that it could seek reimbursement from the minor, so that Illinois law limiting insurers' remedies against minors is not "tangential" to the Plan, if one were to accept the rationale of *Kelleher*.

██ But even if this court were to view *Kelleher* as being on point, we would not follow it. In enacting ERISA, Congress intended that federal courts should create a body of federal common law of rights and obligations under ERISA-regulated plans. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557–58, 95 L.Ed.2d 39 (1987). The string of district court decisions cited in Part I of this opinion shows that among the federal courts in this circuit that have considered the question, an overwhelming majority have held that ERISA pre-empts state antisubrogation rules as they affect a plan's right to reimbursement from beneficiaries who recover from third-party tortfeasors. The court is aware of only one exception. In *Prudential Ins. Co. v. Rodriguez,* No. 90 C 2514, 1991 WL 288127 (N.D.Ill. Dec. 23, 1991), Judge Leinenweber held that Illinois' common law antisubrogation rule did not "relate to" an employee benefit plan because the rule affected only the rights of minors with respect

to their creditors and did not curtail insurers' subrogation rights, although it "has been applied to deny subrogation rights." *Id.* at *3. But as in *Kelleher,* the plan at issue in *Rodriguez* was not self insured. *Id.* In addition, two years after *Rodriguez,* the Illinois Appellate Court made clear that cases such as *Hammond* and *Woodring* did in fact bar insurers from recovering payments from a minor's estate by way of subrogation. *Estate of Aimone,* 188 Ill.Dec. at 823, 619 N.E.2d at 187.

By operating as a limit on a plan's right to reimbursement under the plan's terms, the Illinois common law here does "relate to" employee benefit plans in the broad sense in which Congress used those words. This court can find no meaningful distinction between the Illinois antisubrogation rule and the Pennsylvania statute that, according to the United States Supreme Court, "relate[d] to" the employee benefit plan in *Holliday.* 498 U.S. at 58, 111 S.Ct. at 407. The Pennsylvania law in *Holliday* stated that "[i]n actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery" with respect to benefits paid by "any program, group contract or other arrangement." *Id.* at 52, 111 S.Ct. at 404. The *Hammond* and *Woodring* line of Illinois cases similarly denies a right of subrogation under certain conditions, namely when the tort claimant is a minor. Although the Pennsylvania antisubrogation statute in *Holliday* explicitly referred to employee benefit plans, whereas the relevant Illinois common law in this case does not, the state law in *Holliday* also had a "connection" to such plans in that "[a]pplication of differing state subrogation laws to plans would therefore frustrate plan administrators' continuing obligation to calculate uniform benefit levels nationwide." *Id.* at 60, 111 S.Ct. at 409. Imposing Illinois common law on the Plan would similarly frustrate plan providers, putting them on notice that expected liability conditions may differ in Illinois. *See id.* The Supreme Court's opinion in *Holliday* makes clear that a 50–state survey of the law of subrogation against minors is not needed for one to understand that individual state antisubrogation laws, forever subject to

change, constitute the sort of regulations that Congress intended to pre-empt insofar as they affect the rights of plans as against their beneficiaries.

Having held that ERISA pre-empts Illinois' common law of antisubrogation, this court finds that the material issues in this case are not genuinely disputed. The Plan paid $29,978.80 in benefits to health care providers on Brian's behalf and for Nicolina's benefit. Brian recovered a $50,000 settlement from a third party who caused his injuries and resultant medical expenses. Brian is a "member" of the Plan and is subject to the Plan's requirement that a "member" who recovers "any funds" from responsible third parties must reimburse the Plan. Neither Brian nor Nicolina has reimbursed the Plan for any of the $29,978.80.

### III. Defendants Are Jointly and Severally Liable for $25,000.

■■■■ The reimbursement terms of the Plan, as recited earlier in this opinion, provide that if a "member" gains a recovery from a third-party tortfeasor in the form of a settlement, the Plan is entitled to *the lesser of:* (1) the amount paid by the Plan for the loss, or (2) 50 percent of the settlement amount. Plan Document at § 11(3)(E). Fifty percent of $50,000.00 is $25,000.00, which is less than the amount the Plan paid for Brian's loss. Therefore plaintiff HCC is entitled to be reimbursed for no more than $25,000.00, and summary judgment will be entered in HCC's favor for that amount.

The first amended complaint seeks to impose joint and several liability on the defendants. Count I names Nicolina as administrator of Brian's estate, and Count II names Nicolina and Brian individually. It is clear that Brian, as a Plan "member" who admit-

tedly received "any funds" in settlement, is liable to reimburse the Plan, notwithstanding the pre-empted Illinois common law. HCC argues that Nicolina is equally liable because her dismissal of her medical expense claim in the state court action was in consideration for Brian's receipt of the settlement money. The undisputed facts show that although Nicolina did not formally execute a release of claims at the time the settlement monies were paid, she participated in the settlement and dismissal of the lawsuit. Plaintiff's Rule 12(m) Statement at ¶¶ 2, 14, 15.[1] The Plan provided that the "member," be it Brian or Nicolina, *"or anyone else acting on his or her behalf* agrees ... [t]o include the amount of the benefits paid by AHCP on behalf of the Member in any claim for damages made against the other parties," and "[t]o reimburse AHCP from any funds from these other parties, whether recieved [sic] by settlement, judgment or otherwise." Plan Document at §§ 11(3)(C) (emphasis added), 11(3)(E). This contractual language plainly imposes a reimbursement obligation on Nicolina as well as Brian, even if funds were nominally paid to Brian in settlement of a suit that Nicolina brought and settled on Brian's behalf. For this reason, joint and several liability is appropriate. It also is perhaps the only effective means of assuring the satisfaction of the judgment entered pursuant to this opinion, given that the state court settlement appeared to be structured in an attempt to relieve defendants of their obligation to reimburse the Plan. Summary judgment therefore is granted on both counts of the first amended complaint, and Nicolina and Brian are jointly and severally liable for the judgment to be entered in accordance with this opinion.

1. Plaintiff states that in October 1992, Nicolina and Brian "settled" their state law claims, Plaintiff's Rule 12(m) Statement at ¶ 12, and that Nicolina and Brian "dismissed" the state lawsuit "based upon the aforesaid settlement." *Id.* at ¶ 14. Plaintiff cites to a state court dismissal order showing that Nicolina and Brian moved jointly "to dismiss the case, same having been fully settled." Defendants' Motion for Summary Judgment, Exh. C. Plaintiff's statement that Nicolina participated in the settlement will be deemed to be admitted by defendants, despite

contradictions in their Local Rule 12(n) statement in response. The response expressly admits paragraph 14. Defendants' Response to Plaintiff's 12(m) Statement at ¶ 14. But as to paragraph 12, defendants state that "Nicolina Rogers denies she settled anything." *Id.* at ¶ 12. This denial, however, is not supported with a reference to any part of the record and therefore does not comply with Local Rule 12(n). Accordingly, paragraph 12 is deemed to be admitted. *See Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 922 (7th Cir.1994).

## IV. The Court Will Not Award Attorneys' Fees in This Case.

 Plaintiff seeks an award of attorneys' fees and costs under § 502(g)(1) of ERISA. 29 U.S.C. § 1132(g)(1). An award of fees under this section is within the discretion of the court, and in deciding whether to award fees, the court should consider:

(1) The degree of the opposing party's culpability or bad faith;

(2) The ability of the opposing party to satisfy an award of fees;

(3) Whether an award of fees against the opposing party would deter others from acting under similar circumstances;

(4) Whether the party requesting the fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and

(5) The relative merits of the parties' positions.

*Leigh v. Engle,* 727 F.2d 113, 139 n. 39 (7th Cir.1984). Of the foregoing factors, only the fourth appears to weigh in favor of an award of fees. HCC arguably can be viewed as having brought this suit to clarify significant legal questions that arose largely because of the *Kelleher* case, discussed above. But because of the *Kelleher* case, defendants' position cannot be said to have been without any colorable merit, or to have been presented wholly in bad faith so that a need for deterrence arises. Finally, the court notes that after reimbursement, defendants will be left with a relatively small portion of the initial $50,000 settlement, and this raises doubts as to whether they could satisfy a fee award in this case. The court declines to make an award of fees and costs.

## CONCLUSION

For the foregoing reasons, the court grants the plaintiff's motion for summary judgment and denies defendants' cross-motion for summary judgment. Judgment will be entered for plaintiff and against the defendants jointly and severally in the amount of $25,000.00. Plaintiff's prayer for attorneys' fees and costs is denied.