**Ronald BLACKBURN and Barbara Blackburn, Plaintiffs,**

v.

**Bryan BECKER, Defendant,**

**Ronald BLACKBURN and Barbara Blackburn, Petitioners,**

v.

**SUNDSTRAND CORPORATION, Respondent.**

No. 96 C 50027.

United States District Court, N.D. Illinois, Western Division.

July 29, 1996.

---

Eugene E. Brassfield, William J. Howard, Alfred W. Cowan, John S. Lowry, Brassfield, Cowan & Howard, Rockford, IL, for Ronald Blackburn and Barbara Blackburn.

Patrick J. Winn, Sundstrand Corporation, Rockford, IL, for Bryan Becker and Sundstrand Corp.

## MEMORANDUM OPINION AND ORDER

REINHARD, District Judge.

Petitioner, Ronald and Barbara Blackburn, filed a petition to adjudicate subrogation claim in the circuit court of Winnebago County naming as respondents, Sundstrand Corporation. Respondent removed the petition to adjudicate to this court.[1] Jurisdiction arises under the Employee Retirement and Income Security Act (ERISA), 29 U.S.C. 1444, et seq., and venue is proper as the ERISA plan at issue is administered in this district and division, see 29 U.S.C. § 502(e)(2).

The facts are taken from the allegations in the petition to adjudicate. Petitioners filed suit against Bryan Becker and, as a result of that suit, obtained a settlement consisting of $100,000 for Ronald Blackburn's personal injuries and $5,000 for the personal injuries of Barbara Blackburn. Both petitioners were covered by an ERISA plan (plan) including medical and hospitalization insurance provided by respondent. Respondent, under the plan, paid $26,830.92 for medical expenses incurred by petitioners.

Petitioners' attorneys, pursuant to a written contingency fee agreement, received one-third of the settlement plus $1,125.87 in litigation expenses. Pursuant to the plan, respondent had a right of subrogation in the amount paid out for medical expenses incurred by petitioners. In December 1995, petitioners advised respondents that they were willing to reimburse respondent for its subrogation claim minus one-third for attorney fees and a pro-rata share of the litigation expenses in accordance with the Illinois "common fund doctrine." In turn, respondent refused petitioners' request for reimbursement of their attorney fees and pro-rata litigation expenses, contending that the common fund doctrine under Illinois law is preempted by ERISA. Petitioners, in response, filed their petition to adjudicate, arguing that under Illinois law the common fund doctrine applies notwithstanding that ERISA preempts state law. Alternatively, petitioners also contend that even if ERISA preempts the Illinois common fund doctrine, several federal district courts have created a rule of federal common law that entitles the recipient of a tort judgment or settlement to reduce by one-third the amount of reimbursement owed under an ERISA subrogation clause.

Petitioners seek to have their obligation to reimburse under the plan for the medical expenses paid out reduced by one-third for the attorney fees they paid in recovering settlements from the third-party tortfeasor. They do so by asserting two different theories: (1) that the Illinois common fund doc-

---

1. The petitioners were plaintiffs in a suit for personal injuries arising out of a motor vehicle collision. Those claims were settled and, hence, only the petition to adjudicate was removed as it was the only matter remaining.

trine is not preempted by ERISA and that it should apply to reduce respondent's subrogation claim by one-third; and (2) that even if ERISA preempts the Illinois common fund doctrine, the federal common law provides for such a reduction. The court will address each of these assertions in turn.[2]

I.) *Illinois Common Fund Doctrine and Preemption*

■ Section 514(a) of ERISA provides that "[e]xcept as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all state law insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The preemption clause establishes as an area of exclusive federal concern the subject of every state law that relates to an employee benefit plan governed by ERISA. *FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). In giving definition to the term "relates to," the Supreme Court has recently stated that it is necessary to "go beyond the unhelpful test" of the statute and "look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, —— U.S. ——, ——, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995). The Supreme Court has held that Congress, in passing section 514(a), intended that plans and plan sponsors be subjected to a uniform body of benefits law. *Id.* (citing *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 142, 111 S.Ct. 478, 484, 112 L.Ed.2d 474 (1990)). Congress's goal was to minimize the administrative and financial burden of complying with conflicting directives among states or between states and the federal government and to prevent the potential for conflict in substantive law and requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction. *Id.* In other words, the basic thrust of the preemption clause was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans. *Id.*, —— U.S. at —— ——, 115 S.Ct. at 1677–78.

■ The issue here is whether the Illinois common fund doctrine relates to the plan to the extent its application to reduce the subrogation claim of the plan would interfere with the nationally uniform administration of such plans. It is clear that a state's antisubrogation law, that is, a law that prohibits subrogation by a plan, is preempted by ERISA. *FMC Corp.*, 498 U.S. at 58–61, 111 S.Ct. at 407–09. The Illinois common fund doctrine, however, is not an antisubrogation law. While it has a potential impact on a plan's right to subrogation, it does not act to prohibit such a claim. Thus, *FMC Corp.* does not entirely resolve the preemption issue.

The parties here dispute the import of *Land v. Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Health and Welfare Fund*, 25 F.3d 509 (7th Cir.1994). In that case, the Seventh Circuit stated in unequivocal terms that "[b]ecause ERISA supersedes any and all state laws relating to covered plans, however, (*see* 29 U.S.C. § 1444(a)), [the Illinois common fund doctrine] is not available to [the plaintiff], and the terms of the plan require reimbursement of the entire amount without the deduction of any attorney's fees." *Land*, 25 F.3d at 511. Petitioners characterize this statement as dictum because the issue of whether ERISA preempts the Illinois common fund doctrine was not raised by the plaintiff on appeal, because the statement is found in the "background" section near the front of the opinion and because the statement is unsupported by any analysis or citation of authority. Respondent, on the other hand, de-

---

2. As preliminary matters, the court grants respondent's motion for leave to file as additional authority *Ryan v. Federal Express Corp.*, 78 F.3d 123 (3d Cir.1996). The court also grants petitioners' motion for leave to file as additional authority the amicus brief filed by the Illinois State Bar Association before the Illinois Supreme Court in *Scholtens v. Schneider*, 274 Ill.App.3d 102, 210 Ill.Dec. 580, 653 N.E.2d 775 (1st Dist. 1995), *leave to appeal allowed*, 164 Ill.2d 583, 214 Ill.Dec. 331, 660 N.E.2d 1280 (1996). In allowing the amicus brief to be submitted, however, the court notes that it will not consider the arguments contained therein, but rather, will only look to the citation of authority to the extent it bears on the issues before this court.

728

scribes the statement as a holding which preclusively governs the issue in this case.

■ Certainly, if the statement is not dictum, it drives a stake through the heart of petitioners' non-preemption argument. Dictum has been defined by the Seventh Circuit as a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding. *United States v. Crawley*, 837 F.2d 291, 292 (7th Cir.1988). Because it is peripheral, it may not have received the full and careful consideration of the court that uttered it. *Id.* Put another way, dictum is a remark or an aside concerning some rule of law or legal proposition that is not necessarily essential to the decision and lacks the authority of adjudication. *Id.* Alternatively, the Seventh Circuit has looked to what is at stake in distinguishing dictum from a holding. *Id.* In that regard, the court of appeals explained that a court should ask what reasons there are against giving weight to a passage found in a previous opinion such as whether the passage was unnecessary to the outcome, whether it was an integral part of the earlier opinion, whether it was grounded in the facts of the case and whether the issue addressed in the passage was not presented as an issue. *Id.* at 292–93.

Applying the Seventh Circuit's prior definition of dictum to the statement in *Land*, the court concludes that it is dictum. While a seemingly clear statement of law, it does not appear the statement pertains to an issue actually raised on appeal. Nor was the statement necessary to the disposition of the issues that were raised. Further, the lack of analysis and citation of authority, while not dispositive on the question, lends further

support for the conclusion that the statement is dictum and, hence, not binding on this court.[3]

Nevertheless, because the statement is nonbinding dictum does not render it impotent. Such a clear and direct statement of law by the Seventh Circuit is, at the very least, persuasive on the issue. Admittedly, its persuasive weight is somewhat diluted by the fact it was made prior to the Supreme Court's most recent discussion of the "relates to" language in the preemption clause. *See Travelers*, —— U.S. at —— ——, 115 S.Ct. at 1677–78. It nonetheless remains persuasive as the proposition is consistent with the Supreme Court's discussion of preemption in *Travelers*.

■ Looking to *Travelers*, this court finds the Illinois common fund doctrine to be preempted by ERISA to the extent an employee seeks to have his or her obligation to repay medical expenses pursuant to a plan provision such as the one at issue here reduced by one-third based on the employee's payment of attorney fees. If the Illinois common fund doctrine could be applied as asserted by petitioners here, an ERISA plan would be subjected to a multiplicity of such state laws which would result in a nonuniform administration of such plans. Application of the common fund doctrine would require plans that contain such subrogation clauses and related employer conduct to be tailored to the peculiarities of the law of each jurisdiction. *See Sims v. Ewing*, No. 3–91–0264, at p. 12 (M.D.Tenn. Aug. 20, 1993) (unpublished order).[4] This would clearly run afoul of Congress's purpose and goal in enacting ERISA.[5]

3. Another district court has also recently interpreted the statement in *Land* to be dictum. *See Carpenter v. Modern Drop Forge Co.*, 919 F.Supp. 1198, 1205–06 (N.D.Ind.1995).

4. This unpublished decision was provided to the court and petitioners by respondent.

5. This conclusion is unaffected by the holding of the Illinois appellate court in *Scholtens v. Schneider*, 274 Ill.App.3d 102, 210 Ill.Dec. 580, 653 N.E.2d 775 (1st Dist.1995), *leave to appeal allowed*, 164 Ill.2d 583, 214 Ill.Dec. 331, 660 N.E.2d 1280 (1996). The court simply need not follow the Illinois appellate court's opinion on a

matter which is purely one of federal law. Moreover, the court does not agree with the Illinois appellate court's conclusion that the common fund doctrine "only tangentially or remotely impacts upon the plan and does not threaten federal uniformity." *Scholtens*, 210 Ill.Dec. at 583, 653 N.E.2d at 778. Additionally, the reasoning of the Illinois appellate court is somewhat suspect as it does not mention the *Travelers* decision, a case decided several months before *Scholtens*. While the court also recognizes that the Illinois Supreme Court has granted leave to appeal in *Scholtens*, a statistically rare occurrence, it draws no inferences as to the soundness of *Scholtens* on that basis.

## II.) *Federal Common Law*

■ There is no doubt about the authority of the federal courts to create common law for use in ERISA cases. *Cutting v. Jerome Foods, Inc.,* 993 F.2d 1293, 1296–97 (7th Cir. 1993). Because ERISA sets forth none of its own principles of interpretation, courts have to adopt "some" interpretive principles in order to construe ERISA plans. *Id.* at 1297. These principles, because they are judge-made, constitute common law. *Id.* Such interpretive rules, however, can be overridden by clear language in the plan. *Id.* at 1298–99.

■ Petitioners in this case have pointed to a line of district court cases, none of which this court need follow, *see Old Republic Ins. Co. v. Chuhak & Tecson, P.C.,* 84 F.3d 998, 1003 (7th Cir.1996) (district court decisions are nonprecedential), which fashioned a federal common law rule allowing for a one-third reduction in the amount reimbursed to a plan under a subrogation provision. *See Cutting v. Jerome Foods, Inc.,* 820 F.Supp. 1146, 1155 (W.D.Wis.1991), *aff'd on other grounds,* 993 F.2d 1293 (7th Cir.1993); *Serembus v. Mathwig,* 817 F.Supp. 1414, 1423 (E.D.Wis. 1992); *Dugan v. Nickla,* 763 F.Supp. 981, 984–85 (N.D.Ill.1991). The court is unpersuaded by these cases for several reasons. First, it is entirely inconsistent for this court to rule that ERISA preempts the Illinois common fund doctrine from permitting a reduction in the subrogation amount for attorney fees only to turn around and fashion a federal common law rule that does exactly the same thing. While the court is aware of the significant difference between a state law affecting ERISA and a federal law doing so, the practical inconsistency is difficult to ignore.

Second, and perhaps more importantly, a straightforward provision requiring reimbursement for medical expenses by an employee who recovers from a third-party, such as the one at issue here, calls for no interpretive rules to be crafted by the federal court. There is nothing about such a provision that is ambiguous or in need of interpretation. It calls for reimbursement. *See Ryan v. Feder-*

*al Express Corp.,* 78 F.3d 123, 127 (3d Cir. 1996) (unambiguous subrogation provision calling for employee to pay back all money received in settlement from third party does not require common law application absent showing common law is necessary to effectuate ERISA policy). Petitioners point to nothing in the language to support that such reimbursement should be anything less than full.

Third, and most importantly, the provisions of the plan, including the subrogation one at issue here, were bargained for by the parties. While there is some appeal to the reasoning of the district court in *Dugan,* and embraced by the district courts that later visited the issue, that had the employee not engaged an attorney and pursued the case the fund would not have recovered any of the benefits paid the employee, *see Dugan,* 763 F.Supp. at 984, such a circumstance is insufficient to warrant an otherwise unambiguous and bargained-for-provision being modified. It should surprise no one, the employee or the employer, that the employee will seek compensation for his injuries beyond that provided for in the plan. Nor should it surprise anyone, especially in this day and age, that he will utilize a lawyer to do so.[6] Even more unsurprising is that the employee will fork over one-third of his recovery to the attorney. Given those common understandings, there is no reason to fiddle with an unambiguous plan provision which the parties freely entered into. *See Ryan,* 78 F.3d at 127–28, (it is inequitable to permit employee to partake of plan benefits then, after receiving substantial settlement, invoke common law as justification for refusal to satisfy his end of the bargain). The court respectfully disagrees with the contrary conclusion of the district courts in *Dugan, Serembus* and *Cutting.* Accordingly, the court finds that petitioners are required to reimburse the plan in the full amount of the medical expenses, $26,830.92.

---

6. *See Testa v. Village of Mundelein,* 89 F.3d 443, 444 (7th Cir.1996) (noting that ours is a "litigious society").