ESTATE OF Nathan LAKE, a minor, Plaintiff/Counter-defendant,

v.

Theresa MARTEN, Administrator of the Newell Corporation Employee Welfare Benefit Plan, and Newell Corporation Employee Benefit Plan, Defendants/Counter-plaintiffs.

No. 96 C 50157.

United States District Court, N.D. Illinois, Western Division.

Dec. 2, 1996.

Peter A. Savitski, Rockford, IL, for Plaintiff/Counter–defendant.

Robert C. Pottinger, Barrick, Switzer, Long, Balsley & Van Evera, Rockford, IL, Thomas L. Henderson, Thomas H. Lawrence, McKnight, Hudson, Lewis & Henderson, Memphis, TN, for Defendants/Counter–plaintiffs.

## *MEMORANDUM OPINION AND ORDER*

REINHARD, District Judge.

### INTRODUCTION

Nathan Lake, a minor, was injured in a shooting accident on September 6, 1993. Susan Lake, his guardian, filed suit on his behalf against the tortfeasor, which eventually led to a settlement of $150,000 payable to the minor's estate. Pursuant to Illinois law, the personal injury settlement was conditioned on the approval of the probate court of Winnebago County, Illinois. While the estate was proceeding in state court, defendants, Newell Corporation Employee Benefit Plan ("Plan") and Theresa Marten, the Plan's administrator, filed a claim for a lien against the settlement proceeds for medical benefits paid to Nathan Lake for his injuries. The estate filed a petition to adjudicate medical lien in state court, whereupon defendants removed the action to this court based on federal question jurisdiction in that the estate's petition raised a substantial question of federal law—namely, a question under the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C. § 1144, *et seq.* Upon removal, defendants filed an answer to the petition and filed a counterclaim, which essentially asserts their claim for medical benefits. The estate then filed an amended petition to adjudicate medical lien—Count I seeking to adjudicate the lien and find it unenforceable and Count II seeking to re-

duce defendants' lien by one-third, plus a pro-rata share of costs, based on the Illinois common fund doctrine. This court has jurisdiction pursuant to 28 U.S.C. § 1331, and venue is proper as the state court action was pending in this district and division. Pending before the court are cross-motions for summary judgment by plaintiff, Estate of Nathan Lake, and by defendants, the Plan and Marten. Because the motions have common issues of law, the court consolidates the motions for purposes of this opinion.

## FACTS

The facts are not in dispute and are taken from the parties' statements of fact filed pursuant to Local General Rules 12M and 12N. Susan Lake is an employee of the Newell Company d/b/a Amerock Corporation. Susan Lake elected for group health coverage under the terms of the Plan for herself, effective January 1, 1989, and for Nathan Lake, effective March 1, 1991. The Plan is a self-funded employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1), and both Susan and Nathan were "covered persons" under the Plan.

On September 6, 1993, Nathan Lake was injured in a shooting accident. As a result of that accident, Susan Lake (on Nathan Lake's behalf) asserted a claim for personal injuries against Daniel Syverson. Also, in connection with the same injuries alleged in that claim, the Plan paid medical benefits to Nathan Lake in the amount of $17,337.10. The Plan contains express provisions for subrogation and right of recovery. These provisions, in pertinent part, provide:

> A third party may be liable or legally responsible for expenses incurred by a **Covered Person** for an **Illness**, a sickness, or a bodily injury.
> Benefits may also be payable under this Booklet for such expenses. When this happens, the **Company** may, at its option: take over the **Covered Person's** right to receive payment of the benefits from the third party .... [or]
> recover from the **Covered Person** any benefits paid under the **Booklet** which the **Covered Person** is entitled to receive from the third party. The **Company** will have a first lien upon any recovery, whether by settlement, judgment or otherwise, that the **Covered Person** receives from:
> — the third party; or
> — the third party's insurer or guarantor; or
> — the **Covered Person's** uninsured motorist insurance.

This lien will be for the amount of benefits paid by the Company for the treatment of the **illness**, sickness or bodily injury for which the third party is liable or legally responsible. If the **Covered Person**:

> — makes any recovery as set forth in this provision; and
> — fails to reimburse the Company fully for any benefits paid under this provision;

then he will be personally liable to the Company to the extent of such recovery up to the amount of the first lien. The **Covered Person** must cooperate fully with the Company in asserting its right to recover. [emphasis in original]

Pursuant to a settlement of plaintiff's claim against Daniel Syverson, plaintiff received $150,000. The net proceeds to plaintiff, after all court-approved deductions, was $96,955.98. These deductions included a one-third deduction for attorney fees, plus costs advanced, to the counsel who performed significant legal services for plaintiff in connection with the lawsuit. Plaintiff has not reimbursed the Plan for the $17,337.10, which was paid out in benefits.

## CONTENTIONS

Defendants move for summary judgment on their counterclaim, contending that plaintiff is bound by the terms of the Plan and that, according to those terms, plaintiff must reimburse the Plan for the $17,337.10 received in medical benefits. Defendants further contend that any state laws which might limit or bar such reimbursement are preempted by ERISA. Defendants also seek an award of attorney fees in accordance with 29 U.S.C. § 1132(g)(1).

Plaintiff, in response to defendants' motion, and in support of the amended petition,

contends that the lien is unenforceable because, under Illinois law, an insurer cannot assert subrogation rights against a minor's estate for medical expenses. In the alternative, plaintiff contends that should the lien be found to be enforceable, it should be reduced by one-third and a pro-rata share of costs under the Illinois common fund doctrine. As to defendants' claim for attorney fees, plaintiff contends that such an award is not warranted in this case, because the claims advanced by plaintiff have merit under existing Illinois law and because plaintiff has not displayed bad faith in this litigation.

Defendants, in reply and in opposition to plaintiff's motion, contend that both the Illinois anti-subrogation law and the Illinois common fund doctrine are preempted by ERISA and do not apply. As to their claim for attorney fees, defendants maintain their contentions that such an award is warranted because there are a "growing stack of decisions" in this district finding plaintiff's defenses to the lien to be without merit and because such an award is necessary to serve as a deterrent to future state court plaintiffs.

## DISCUSSION

Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Weisbrot v. Medical College of Wisconsin*, 79 F.3d 677, 680 (7th Cir.1996). When considering a motion for summary judgment, the court must take the facts in the light most favorable to the party opposing the motion and draw all reasonable inferences in that party's favor. *Condo v. Sysco Corp.*, 1 F.3d 599, 601 (7th Cir.1993), *cert. denied*, 510 U.S. 1110, 114 S.Ct. 1051, 127 L.Ed.2d 373 (1994). The party opposing a properly supported motion for summary judgment, however, may not defeat it simply by resting upon the allegations and denials of his or her pleadings, but must present affirmative evidence raising a genuine issue of material fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986). Where a party fails to present evidence on an element essential to his or her case and on which he or she would bear the burden of proof at trial, summary judgment is appropriate, as all other facts are rendered immaterial by the failure of proof. *See Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. These traditional notions apply equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir.1996).

### A. Enforceability of the lien under Illinois law

Plaintiff contends that the Illinois common law rule which prohibits insurers from exercising a right of subrogation against the settlement of tort claims by a minor's estate bars the Plan from enforcing its lien against plaintiff. In so contending, plaintiff principally relies upon *Estate of Hammond v. Aetna Cas. (Aetna Life & Cas. Co.)*, 141 Ill. App.3d 963, 96 Ill.Dec. 270, 273, 491 N.E.2d 84, 87 (1st Dist.1986) and *Estate of Woodring v. Liberty Mut. Fire Ins. Co.*, 71 Ill.App.3d 158, 27 Ill.Dec. 399, 400, 389 N.E.2d 211, 212 (2d Dist.1979). Defendants contend that ERISA preempts this anti-subrogation rule, relying on a host of federal cases decided in both this district and others.

Following the reasoning of the Supreme Court in *FMC Corp. v. Holliday*, 498 U.S. 52, 61, 111 S.Ct. 403, 409, 112 L.Ed.2d 356 (1990), federal courts in this district have uniformly held that ERISA preempts Illinois' anti-subrogation common law rule in so far as self-funded benefit plans are concerned. *See, e.g., In re Estate of O'Leary*, No. 95 C 0958, 1995 WL 599074, at *3 (N.D.Ill. Oct.6, 1995) (Holderman, J.); *Health Cost Controls v. Rogers*, 909 F.Supp. 537, 542 (N.D.Ill.1994) (Grady, J.); *Health Cost Controls v. Bode*, No. 93 C 3557, 1994 WL 53783, at *3 (N.D.Ill. Feb.18, 1994) (Kocoras, J.); *Pople v. Cox*, No. 93 C 6274, 1993 WL 469915, at *4 (N.D.Ill. Nov.12, 1993) (Conlon, J.).[1] The

---

1. Although plaintiff cites to *Prudential Ins. Co. of Am. v. Rodriguez*, No. 90 C 2514, 1991 WL 288127, at *3 (N.D.Ill.Dec.23, 1991) for the op-

posite conclusion, that case involved an unfunded benefit plan and is thus distinguishable. *See*

analysis begins with the recognition of ERISA's preemption provision, which provides for the preemption of "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The analysis then proceeds to examine ERISA's "saving clause," which excludes state laws regulating insurance from ERISA's preemption provision, *see* 29 U.S.C. § 1144(b)(2)(A), and ERISA's "deemer clause," which provides that an employee benefit plan cannot be "deemed" to be an insurance company for purposes of any state law purporting to regulate insurance. *See* 29 U.S.C. § 1144(b)(2)(B). Based on the Supreme Court's interpretation of these provisions, which reads the deemer clause to exempt self-funded ERISA plans from state laws that regulate insurance within the meaning of the saving clause, *see FMC Corp.,* 498 U.S. at 60–62, 111 S.Ct. at 409, courts in this district have concluded that ERISA preempts Illinois' anti-subrogation common law rule.

Apart from a public policy argument which the court summarily rejects, plaintiff's only challenge to the soundness of these decisions and this analysis is that the Illinois common law rule does not "relate to" the Plan so as to trigger ERISA's preemption provision. Plaintiff contends that the Illinois law is one of general applicability such that it makes "no reference to ERISA."

■ As the Supreme Court has explained, a law " 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* —— U.S. ——, ——, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995). Thus, the fact that a law makes no "reference to" an ERISA plan is only half the analysis, for the law may still have a "connection with" such a plan. *Id.* Plaintiff has pointed to only one decision in this district in which a court has found that Illinois' anti-subrogation common law rule

has no connection with an ERISA plan— *Prudential Ins. Co. of Am. v. Rodriguez,* No. 90 C 2514, 1991 WL 288127, at *3 (N.D.Ill. Dec.23, 1991) (Leinenweber, J.). In finding that the Illinois rule has no connection with an ERISA plan, the court in *Rodriguez* stated: "Illinois common law only affects the ability of minors to make claim for reimbursement for medical bills and the right of a medical provider to recover from a minor. The law does not deny subrogation rights to insurance companies. It denies rights to a minor for which an insurance company that could be subrogated." *Id.* at *3. For these reasons, the court in *Rodriguez* found that the Illinois common law rule does not "relate to" an ERISA plan.

At least one court in this district has expressly declined to follow *Rodriguez* in this respect, *see Rogers,* 909 F.Supp. at 543, and two others have found that Illinois' anti-subrogation common law rule "relates to" an ERISA plan after considering similar arguments. *See, e.g., In re Estate of O'Leary,* 1995 WL 599074, at *4; *Pople,* 1993 WL 469915, at *4. Several other courts have merely assumed in their treatment of the preemption issue that the Illinois rule "relates to" an ERISA plan. *See, e.g., Bode,* 1994 WL 53783, at *3; *Preze v. Board of Trustees, Pipefitters Welfare Fund Local 597,* No. 91 C 6124, 1992 WL 38398, at *3–4 (N.D.Ill. Feb.24, 1992) (Kocoras, J.), *aff'd,* 5 F.3d 272 (1993); *General Business Forms, Inc. v. Thornburg,* No. 88 C 8549, 1989 WL 103382, at *4–6 (N.D.Ill. Aug.29, 1989) (Holderman, J.).[2]

■ This court agrees with the persuasive weight of authority in this district and concludes that Illinois' anti-subrogation common law rule "relates to" the Plan. In so doing, the court declines to follow *Rodriguez.* Illinois' rule, as delineated in *Hammond* and *Woodring,* prohibits the Plan from having a right of subrogation and reimbursement against a "covered person" when the covered person is a minor. Thus, just like the anti-

---

*Health Cost Controls,* 909 F.Supp. at 543 (distinguishing *Rodriguez* on that basis).

**2.** While the court in *General Business Forms* applied Illinois' anti-subrogation common law rule to the parties in that case, it did so only

because the terms of the insurance plan at issue operated to revive the effect of the anti-subrogation rule. *General Business Forms,* 1989 WL 103382, at *6.

subrogation law at issue in *FMC Corp.*, Illinois' anti-subrogation common law rule has a sufficient connection with an employee benefit plan such that it "relates to" an ERISA plan. *Cf. FMC Corp.*, 498 U.S. at 59–60, 111 S.Ct. at 408–09 (finding that the Pennsylvania statute "relates to" employee benefit plans where the law prohibited plans from being structured in a manner requiring reimbursement in the event of recovery from a third party); *see also Rogers*, 909 F.Supp. at 543–44.[3] As stated in *Rogers*, the Supreme Court's opinion in *FMC Corp.* makes it clear that a "50–state survey of the law of subrogation against minors is not needed for one to understand that individual state antisubrogation laws, forever subject to change, constitute the sort of regulations that Congress intended to pre-empt insofar as they affect the rights of plans as against their beneficiaries." *Rogers*, 909 F.Supp. at 543–44. This conclusion is fortified by the Supreme Court's decision in *Travelers*, wherein the Court, in defining "relates to," stated that courts must look to "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Travelers*, —— U.S. at ——, 115 S.Ct. at 1677. Subjecting self-funded ERISA plans to various state anti-subrogation laws, like Illinois', would be contrary to the purpose of ERISA's preemption clause, which was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans. *Id.* at —— –——, 115 S.Ct. at 1677–78. Ac-

cordingly, because Illinois' anti-subrogation common law rule "relates to" the Plan, it is preempted by ERISA.[4] As a consequence, plaintiff's motion is denied with respect to Count I of the amended petition.

### B. Illinois' common fund doctrine

■ Next, the court addresses plaintiff's contention that, should defendants' lien be found valid and enforceable, such lien should be reduced by one-third and a pro-rata share of costs in accordance with the Illinois common fund doctrine. The common fund doctrine permits a party who creates, preserves or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees. *Brundidge v. Glendale Fed. Bank, F.S.B.*, 168 Ill.2d 235, 213 Ill.Dec. 563, 565, 659 N.E.2d 909, 911 (1995). Defendants contend that, like Illinois' anti-subrogation common law rule, Illinois' common fund doctrine is preempted by ERISA.

■ A month before plaintiff filed its brief in opposition to defendants' motion and in support of its own motion for summary judgment, this court decided *Blackburn v. Becker*, 933 F.Supp. 724 (N.D.Ill.1996) (Reinhard, J.). In *Blackburn*, this court considered an argument identical to the contention presently raised by plaintiff. *Id.* at 727–28. In addition, this court also considered whether such a doctrine should be recognized as a matter of federal common law, an argument

---

3. While the court is cognizant of the fact that Illinois' rule would permit the Plan to assert a right of subrogation or reimbursement against plaintiff's parents or guardian, as according to Illinois law, they, not plaintiff, received the benefit of the payments by the Plan, *see Klem v. Mann*, 279 Ill.App.3d 735, 216 Ill.Dec. 454, 457, 665 N.E.2d 514, 517 (1st Dist.1996), *appeal denied*, 168 Ill.2d 594, 219 Ill.Dec. 565, 671 N.E.2d 732 (1996), such fact does not render the effect of Illinois' rule too tenuous, remote or peripheral to warrant a finding that the law does not relate to the Plan. The Plan specifically provides for a right of subrogation and reimbursement against any "covered person." Illinois' rule would operate to negate that provision. Thus, Illinois' rule has a significant effect upon the Plan's provisions.

4. Were this court to conclude otherwise, it would be unable, on the record before it, to resolve the

issue of the enforceability of the Plan's lien. Illinois law does not permit structuring of settlements in such a manner that they defeat subrogation rights. *Estate of Aimone v. State of Illinois Health Benefit Plan/Equicor*, 248 Ill.App.3d 882, 188 Ill.Dec. 821, 823, 619 N.E.2d 185, 187 (3d Dist.1993). There is evidence in the record which suggests that, in settling the claim on plaintiff's behalf, the parties also settled the claim against Daniel Syverson for medical expenses. In exhibit G, the claim made to Syverson's insurance company, a claim is made for over $21,000 for plaintiff's medical expenses. The actual settlement agreement, however, is not part of the record. Thus, the court cannot determine whether such a claim was, in fact, settled. If the actual settlement did, in fact, resolve such a claim, then the Plan would arguably be entitled to assert a lien against the settlement proceeds notwithstanding Illinois' anti-subrogation common law rule. *See id.*

not raised by plaintiff in this case. *Id.* at 729. Not only did this court conclude that ERISA preempts Illinois' common fund doctrine, *id.* at 728, this court declined to create such a doctrine as a matter of federal common law, *id.* at 729. Having traversed this ground so recently (and thoroughly), this court is unwilling to reconsider its position on this issue, particularly where plaintiff has not made any argument as to the soundness of that decision or the authority relied upon therein. Accordingly, the court finds that ERISA preempts the Illinois common fund doctrine.[5] As a consequence, plaintiff's motion is denied with respect to Count II of the amended petition, and defendants' motion is granted with respect to the counterclaim.

**5.** In *Blackburn*, this court noted its disagreement with the Illinois appellate court decision of *Scholtens v. Schneider*, 274 Ill.App.3d 102, 210 Ill.Dec. 580, 653 N.E.2d 775 (1st Dist.1995), *leave to appeal allowed*, 164 Ill.2d 583, 214 Ill. Dec. 331, 660 N.E.2d 1280 (1995). *Blackburn*, 933 F.Supp. at 728 n. 5. Shortly after *Blackburn*, the Illinois Supreme Court issued a decision affirming the Illinois appellate court in *Scholtens*. *See Scholtens v. Schneider*, 173 Ill.2d 375, 219 Ill.Dec. 490, 671 N.E.2d 657 (1996). Although the Illinois Supreme Court engaged in an extensive discussion of *Travelers*, a decision not addressed by the appellate court, this court respectfully disagrees with the conclusions of the Illinois Supreme Court.

The Illinois Supreme Court characterized the claim for attorney fees as being "quasi-contractual" in nature and as one arising independently of the employee benefit plan and subrogation agreements between the plan and the plan's participants. *Scholtens*, 219 Ill.Dec. at 497–98, 671 N.E.2d at 664–65. The court stated that application of the common fund doctrine "does not alter the relationship or agreements formulated among the principal ERISA entities (e.g., the employer, the plan fiduciaries, and the participants)." *Id.* Rather, the court viewed the common fund doctrine as only affecting the relations between one of those entities (i.e., the trustees of the plan) and an outside party (i.e., the attorney). *Id.* "In effect," the court stated, "the attorney who performed the legal services that ultimately led to the recovery of the plan's subrogation lien instituted a separate and distinct action against the Trustees for unpaid fees. The action, in substance if not in form, is wholly independent of and unrelated to the underlying benefit plan. We conclude, therefore, that the common fund doctrine does not dictate or restrict the manner in which ERISA plans are structured or administered." *Id.*

While this court does not have the benefit of the record in *Scholtens*, it questions the Illinois Supreme Court's characterization of the "action"

## C. Attorney fees

■ Last, the court considers defendants' request for attorney fees. The decision to award attorney fees under 29 U.S.C. § 1132(g)(1) is discretionary. Although there are a variety of tests the court may employ, whichever approach is used, the "bottom-line question" is the same—"was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Little v. Cox's Supermarkets*, 71 F.3d 637, 644 (7th Cir.1995). In considering whether a position is substantially justified, the court considers whether the losing party was justified to a degree that could satisfy "a reasonable person." *Id.*

before that court. It was not, in this court's view, an independent action brought by the attorney who represented Scholtens. It was an action brought by Scholtens to *reduce* the amount of the trustees' lien against the settlement proceeds. *See Scholtens*, 219 Ill.Dec. at 493, 671 N.E.2d at 660; *Scholtens*, 210 Ill.Dec. at 581, 653 N.E.2d at 776. Moreover, it was not an action to recover "unpaid legal fees," it was an action by Scholtens to avoid reimbursing the trustees the full amount of benefits that were paid out. Scholtens' tort claim was settled for $100,000, and the trustees of the plan sought reimbursement for approximately $42,921 in benefits paid out. *Scholtens*, 210 Ill.Dec. at 581, 653 N.E.2d at 776. The trial court found that the common fund doctrine applied and reduced the trustees' lien to $28,286. *Id.* Had the lien not been reduced, the attorney in the case would have still been paid. Thus, the reduction of the lien was for the benefit of Scholtens, not Scholtens' attorney, and contrary to the Illinois Supreme Court's conclusion, application of the common fund doctrine *did* affect the contractual relationship between the plan and a participant of the plan. The provisions of the plan and the separate subrogation agreement at issue in *Scholtens* both called for total reimbursement. *Scholtens*, 219 Ill.Dec. at 492, 671 N.E.2d at 659. By applying the common fund doctrine in that case, the Illinois courts altered those contractual provisions, provisions that were bargained for by the parties. *See Blackburn*, 933 F.Supp. at 729. Because the common fund doctrine operates to modify unambiguous and bargained-for provisions in employee benefit plans, this court is unable to agree with the conclusion of the Illinois Supreme Court that any effect the doctrine has upon employee benefit plans is "simply too tenuous, remote or peripheral to warrant a finding that the doctrine relates to such plans." For these reasons and those stated in *Blackburn*, therefore, this court declines to follow the Illinois authority on this issue.

612

This court finds that, although plaintiff ultimately lost this litigation, it was substantially justified in contesting defendants' lien against the settlement proceeds. As reflected in this opinion, there is a considerable split amongst the Illinois courts and the federal courts in this district on both of the issues plaintiff litigated. Had this matter not been removed to federal court, the result could have been different. In fact, on the common fund doctrine issue, the result would have been different in light of the recent Illinois Supreme Court decision in *Scholtens*. Accordingly, defendants' request for attorney fees is denied.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is denied. Defendants' motion for summary judgment is granted in part and denied in part. Judgment is rendered in favor of defendants on their counterclaim. The court hereby orders and declares that:

A. The terms of the Plan provide for full reimbursement from "covered persons," including the estates of minors, for sums paid by the Plan to covered persons which those persons recover from third parties;

B. The Estate of Nathan Lake is in violation of these provisions by failing to reimburse the Plan for sums paid by the Plan which the estate recovered from a third party; and

C. The Estate of Nathan Lake is required, under the terms of the Plan, to reimburse the Plan in the amount of $17,337.10 out of the settlement proceeds recovered in state court.

The Estate of Nathan Lake is hereby enjoined to reimburse the Plan in the amount of $17,337.10. All other relief sought in the counterclaim is denied. This cause is hereby dismissed in its entirety.