**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

_____

No. 96-2080

No. 96-2231

_____

Thomas Waller; Judith Waller,     *
                                      *

     Plaintiffs - Appellants/     *

     Cross-Appellees,            *

                                        * Appeals from the United States

     v.                           * District Court for the

                                        * District of Minnesota.

Hormel Foods Corporation; Hormel    *

Foods Corporation Medical Plan,     *

                                        *

     Defendants - Appellees/     *

     Cross-Appellants.          *

_____

Submitted: February 10, 1997

Filed: July 17, 1997

_____

Before MAGILL, HEANEY, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

Thomas and Judith Waller received medical benefits from the Hormel Foods Corporation Medical Plan (the "Plan"), a plan governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). They appeal the district

court's[1] decision that the Plan's subrogation clause grants it a first priority claim to the proceeds of the Wallers' settlement with a third-party insurer.  The Plan cross appeals the award of attorney's fees to the Wallers for generating the settlement fund.  We remand for further consideration of the attorney's fee issue but otherwise affirm.

## I.

The Wallers were injured in a head-on collision with an automobile being driven on the wrong side of Interstate 35 in southern Minnesota.  The Plan is funded by Hormel Foods Corporation, Thomas Waller's employer, to provide specified health care benefits to Hormel employees and their dependents.  The Plan has paid over $157,000 of Judith Waller's accident-related medical expenses.

Following the accident, the Wallers asserted claims against American Family Insurance Group ("American Family") under two insurance policies. One provided liability insurance to the driver of the other car, and the other provided underinsured motorist coverage to the Wallers.  Each policy had a limit of $100,000 per person per accident.  The Wallers and American Family agreed to settle Mrs. Waller's claims for $200,000, the aggregate policy limits, but American Family required a release from the Plan.  The Plan demanded full reimbursement from the settlement proceeds of the medical benefits provided to Mrs. Waller, citing the following Plan provision:

---

[1]The HONORABLE MICHAEL J. DAVIS, United States District Judge for the District of Minnesota.

> In the event of any payment by the company for health care expenses, the company shall be subrogated to all rights of recovery which you or your dependent, receiving such payment, may have against any person or organization.

The Wallers responded by commencing this action for a declaratory judgment "that the Plan's claimed subrogation interest is enforceable only if and after plaintiffs are fully compensated for their damages." Hormel and the Plan counterclaimed for a declaratory judgment that the Plan's claim to any monies recovered from third parties "is prior to the rights of Plaintiffs." The Wallers then amended their complaint to add a claim that the Plan, if entitled to priority, must "pay its fair share of attorney's fees and costs incurred in securing recovery of the insurance proceeds."

The District Court held that the Plan's subrogation clause grants it first priority to the proceeds of the tentative $200,000 settlement with American Family. However, the court reduced the Plan's claim to the settlement proceeds by $50,000 as an award of attorney's fees to the Wallers for creating the settlement fund, commenting that "it would be unjust to permit the Plan to reap where it has not sown." The Wallers appeal, arguing that the Plan is not entitled to be reimbursed until Mrs. Waller has been made whole. Hormel and the Plan cross-appeal the award of attorney's fees.

## II.

The insurance laws of many (but by no means all) States preclude an insurer that has made payments to an injured insured from enforcing its subrogation rights until the insured is fully compensated for her injury. See Fields v. Farmers Ins. Co., 18 F.3d

831, 835-36 (10th Cir. 1994); <u>Cutting v. Jerome Foods, Inc.</u>, 993 F.2d 1293, 1296-98 (7th Cir. 1993), <u>cert. denied</u>, 510 U.S. 916 (1993).  The Wallers argue for application of this "make whole" principle but concede, as they must, that ERISA preempts any state law that would otherwise override the subrogation provision in a self-insured plan such as Hormel's.  <u>See</u> <u>FMC Corp. v. Holliday</u>, 498 U.S. 52 (1990).  A subrogation provision affects the level of benefits conferred by the plan, and ERISA leaves that issue to the private parties creating the plan.  <u>See</u> <u>Alessi v. Raybestos-Manhattan, Inc.</u>, 451 U.S. 504, 511 (1981); <u>John Morrell & Co. v. United Food & Commercial Workers Int'l Union</u>, 37 F.3d 1302, 1303-04 (8th Cir. 1994), <u>cert. denied</u>, 115 S. Ct. 2251 (1995).  Thus, this issue turns solely upon the proper interpretation of the Plan's subrogation provision.  Other circuits that have considered subrogation priority issues involving similarly worded ERISA plans have reached conflicting conclusions.[2]

The Plan provides that it "shall be subrogated to all rights of recovery which you or your dependent . . . may have against any person or organization."  It does not define subrogation.  As the district court noted, "[o]ne may presume that this term [subrogation] does not have great currency among laypersons, but this neither defeats reasonable expectations nor creates ambiguity." One common definition is "the substitution of one for another as a creditor so that the new creditor succeeds to the former's rights in law and equity."  WEBSTER'S THIRD NEW INTERNATIONAL

---

[2]<u>Compare</u> <u>Sunbeam-Oster Co. v. Whitehurst</u>, 102 F.3d 1368 (5th Cir. 1996), <u>with</u> <u>Barnes v. Independent Auto. Dealers</u>, 64 F.3d 1389 (9th Cir. 1995), for cases applying the *de novo* standard of review.  <u>Compare</u> <u>Cagle v. Bruner</u>, 112 F.3d 1510, 1520-21 (11th Cir. 1997), <u>with</u> <u>Cutting</u>, 993 F.2d at 1299, for cases applying the arbitrary and capricious standard of review.

DICTIONARY, Subrogation (unabridged ed. 1986).  We agree with the district court that the audience for which an ERISA plan is written -- the average plan participant in an employer-funded plan -- would read this provision as meaning that the Plan has a "first priority" or "first dollar" claim to any recovery arising out of an injury up to the amount of medical benefits the Plan has paid on account of that injury.

The Wallers argue that we should construe the word "subrogated" in the Plan to include the make-whole principle that has been engrafted onto the subrogation clauses in insurance policies under state law.  But there is good reason not to read ERISA plans like insurance policies.  "The very heart of the bargain when the insured purchases insurance is that if there is a loss he or she will be made whole.  The cases that originally applied subrogation to insurance contracts . . . never envisioned the use of subrogation as a device to fully reimburse the insurer at the expense of leaving the insured less than fully compensated for his loss."  Powell v. Blue Cross & Blue Shield, 581 So. 2d 772, 777 (Ala. 1990).  Employer-funded medical benefit plans should not be viewed in this fashion.

Alternatively, the Wallers argue that the absence of express "first priority" language requires us to construe the Plan in their favor on this issue.  We disagree.  The Plan's subrogation provision appears in the Hormel Employee Benefits handbook, which is subtitled "Summary Plan Description for Non-Exempt Bargaining Unit Employees of Geo. A . Hormel & Company" at eight facilities.  Under ERISA, the summary plan description ("SPD") is a heavily regulated document.  It must be filed with the Department of Labor and distributed to plan participants and beneficiaries.  See 29 U.S.C. § 1021(a), (b).  Unlike a formal contract or trust instrument, SPDs "shall

-5-

be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1); see 29 C.F.R. § 2520.102-2(b). A subrogation clause published in an SPD must be construed in light of the essential nature and purpose of that document. Viewed in this light, we agree with the Fifth Circuit that, "[f]ar from the kind of silence that would be tantamount to ambiguity, the only silence here is the understandable absence of separate, specifically articulated rules for situations of partial recovery and total recovery with variations depending on the nature of the source of recovery. This signifies nothing more than that, regardless of source, the rule is the same for total and partial recoveries." Sunbeam-Oster Co., 102 F.3d at 1376.

### III.

Hormel and the Plan cross appeal the district court's decision to reduce the Plan's share of the American Family settlement proceeds by $50,000 as a reasonable attorney's fee to the Wallers for obtaining the settlement. The record on this issue is virtually non-existent. Apparently, the Wallers agreed to a fee arrangement that would entitle their attorneys to one-third of any amount recovered in the American Family settlement. The district court concluded as a matter of federal common law that the Plan should be assessed an attorney's fee for creation of the settlement fund, and that legal costs to the Wallers, not the value of the legal services to the Plan, should be the governing factor in determining the amount of that fee award. Acknowledging "it is extremely doubtful" that the Plan would have spent over $65,000 to obtain a $200,000 settlement "where liability and damages were fairly certain," the court nonetheless

reduced the Plan's claim by $50,000 as an award to the Wallers for their attorneys' efforts. This equals one-fourth of the American Family settlement and roughly one-third of the Plan's subrogation interest at the time the case was submitted. The question is whether that award is an appropriate application of the federal common law that must "fill the gaps left by ERISA's express provisions." <u>Landro v. Glendenning Motorways, Inc.</u>, 625 F.2d 1344, 1351 (8th Cir. 1980).

Courts in the Seventh Circuit have debated this issue rather inconclusively.[3] Hormel argues that we should follow <u>Ryan v. Federal Express Corp.</u>, 78 F.3d 123 (3d Cir. 1996), and fully reimburse the Plan for medical benefits paid, with no attorney's fee reduction. The plan at issue in <u>Ryan</u> required beneficiaries to reimburse "100% of the amount of covered benefits paid" and specifically addressed the question of attorney's fees incurred by a beneficiary in recovering from a third party. The beneficiary in <u>Ryan</u> argued that the plan should nonetheless pay its pro rata share of the fees incurred in obtaining a very large settlement, one that greatly exceeded the plan benefits paid. The court rejected that contention and enforced the plan as written, concluding "it would be inequitable to permit the Ryans to partake of the benefits of the Plan and then . . . invoke common law principles to establish a legal justification for their refusal to satisfy their end of the bargain. 78 F.3d at 127-28.

---

[3]<u>Compare</u> <u>Land v. Chicago Truck Drivers, Helpers & Warehouse Union Health & Welfare Fund</u>, 25 F.3d 509, 511 (7th Cir. 1994), <u>Estate of Lake v. Marten</u>, 946 F. Supp. 605, 610-11 (N.D. Ill. 1996), <u>and</u> <u>Blackburn v. Becker</u>, 933 F. Supp. 724, 729 (N.D. Ill. 1996), <u>vacated</u>, 1997 WL 290965 (7th Cir. 1997), <u>with</u> <u>Carpenter v. Modern Drop Forge Co.</u>, 919 F. Supp. 1198, 1203-06 (N.D. Ind. 1995), <u>Serembus v. Mathwig</u>, 817 F. Supp. 1414, 1423 (E.D. Wis. 1992), <u>and</u> <u>Dugan v. Nickla</u>, 763 F. Supp. 981, 984 (N.D. Ill. 1991).

We agree with the decision in Ryan because it properly bases the federal common law under ERISA on the terms of the particular plan at issue. Cf. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56 (1987); Anderson v. John Morrell & Co., 830 F.2d 872, 877 (8th Cir. 1987). But Ryan does not end the inquiry in this case because the Plan's subrogation clause contains no provision regarding attorney's fees. Silence on this issue is not easily construed. It may mean that the Plan should always receive 100% of its claim for reimbursement, even if that produces unfair results in a particular case, so that the Plan retains maximum control over efforts to recover from third parties. But it may also mean that the Plan will pay reasonable fees and expenses so as to encourage beneficiaries to press claims to which the Plan will be partially subrogated. Since the Plan does not clothe its administrators with discretion to decide such issues, it is left to the courts to construe the subrogation clause *de novo.* In these circumstances, we agree with the district court's decision to reduce Hormel's subrogation recovery by the amount of a reasonable attorney's fee.

However, we disagree with the court's decision not to base the amount of fee awarded on the value of the Wallers' legal services *to the Plan.* Focusing on that factor, the Plan contends that it would have made a claim under the American Family policies once the extent of medical benefits to be provided was better known, that the Wallers "jumped the gun" primarily to litigate the priority issue with Hormel, and that they obtained a policy limits settlement with little effort. If true, that is certainly relevant to the question of the value of their legal services to the Plan. Compare Pena v. Thorington, 595 P.2d 61, 64 (Wash. Ct. App. 1979); Barreca v. Cobb, 668 So.2d 1129, 1132 (La. 1996). In this case, where the Plan's subrogation interest is a very large percentage of the American Family policy limits, reducing the Plan's claim by

more than the amount it would have expended to create the settlement fund distorts the subrogation clause and expands this employee medical benefit beyond the confines of the Plan. Therefore, a contingent fee award would not be appropriate absent evidence that the Plan would have hired counsel on this basis, and an award based on counsel's actual time devoted to the matter must exclude time devoted to the Wallers' dispute with the Plan. The record on appeal is inadequate to determine a reasonable attorney's fee based upon value of legal services to the Plan, and in any event this is an issue committed in the first instance to the district court's discretion.

For the foregoing reasons, we must remand this case for further consideration of the attorney's fee issue. In all other respects, the decision of the district court is affirmed, including its decision to deny an attorney's fee award under 29 U.S.C. § 1132(g).

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.