

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-14-1996

# Ryan v. Fed Express Corp

Precedential or Non-Precedential:

Docket 95-5180

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Ryan v. Fed Express Corp" (1996). *1996 Decisions.* Paper 217.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/217

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 95-5180


THERESA LYN RYAN, An infant by her Guardian Ad Litem,
ALBERTA CAPRIA-RYAN; GREGORY L. RYAN, JR., An infant
by his Guardian Ad Litem, ALBERTA CAPRIA-RYAN;
BRIGID RYAN, An infant by her Guardian Ad Litem,
ALBERTA CAPRIA-RYAN; ALBERTA CAPRIA-RYAN, Individually;
GREGORY L. RYAN, Individually

v.

FEDERAL EXPRESS CORPORATION,

Appellant


On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 94-cv-01467)


Submitted Pursuant to Third Circuit LAR 34.1(a)
January 25, 1996

BEFORE:  COWEN and McKEE, <u>Circuit Judges</u>
and POLLAK, <u>District Judge</u>*


(Filed March 14, 1996)


Leonard A. Wolkstein
Gutterman, Wolkstein, Klinger &
 Yohalem
240 East Grove Street
P.O. Box 2850
Westfield, New Jersey  07091

    COUNSEL FOR APPELLEES


1

*Honorable Louis H. Pollak, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Elizabeth C. Smith
Federal Express Corporation
1980 Nonconnah Boulevard
3rd Floor
Memphis, TN  38132

COUNSEL FOR APPELLANT


OPINION


COWEN, Circuit Judge.

In this case we must decide the extent of the power of federal courts to develop federal common law in cases involving the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.  Specifically, is such power sufficiently broad to permit the district court to override a subrogation provision in an ERISA-regulated plan on the ground that the plan would be unjustly enriched if it were to be enforced as written. In the instant case the district court granted the motion by Alberta, Gregory, Brigid and Theresa Ryan ("the Ryans") for summary judgment, ruling that appellant Federal Express--despite having paid the plaintiffs over $190,000.00 under the terms of its health plan before plaintiffs settled their malpractice claims--was not entitled to full reimbursement.  The district court ruled that the health plan's subrogation provision could not be given effect because Federal Express would receive an "unjust benefit" if it were not required to deduct from its subrogation lien a pro rata share of the attorneys' fees that the

3

plaintiffs had incurred in obtaining their malpractice settlement.

In granting the Ryans' motion for summary judgment, the district court failed to articulate how its effective revision of the terms of the Federal Express Plan served to validate an important statutory policy of ERISA. Such a determination is a necessary antecedent to overriding an express provision of a benefits plan within the purview of ERISA. Because the district court interpreted the authority of federal courts to develop federal common law under ERISA too broadly, we will reverse the February

15, 1995, order of the district court granting the Ryans summary judgment

.


## I.

Alberta Capria-Ryan and Gregory L. Ryan are employees of Federal Express. Theresa Lyn Ryan is their infant daughter. The Ryans are beneficiaries under the Federal Express Group Health Plan

("the Plan"), which is a self-funded employee welfare benefit plan within the meaning of ERISA. 29 U.S.C. § 1002(1).

Article 11, Section 11.2 of the Plan provides, in relevant part, that "[e]ach Covered Participant shall be deemed conclusively to have agreed to and accepted the terms and conditions of the Plan when he becomes a Covered Participant." App. at 192. The Plan also contains a subrogation/reimbursement

4

clause which requires full reimbursement of all benefits paid by the Plan if the amount of a covered employee's net recovery exceeds the amount of benefits paid by the Plan.  Article 8, Section 8.5 of the Plan provides in pertinent part that

> if benefits are paid on account of an illness resulting from the intentional actions or from the negligence of a third party, the Plan shall have the right to recover, against any source which makes payments or to be reimbursed by the Covered Participant who receives such benefits, <u>100% of the amount of covered benefits paid</u>. (Subrogation in connection with the Insured Options shall be governed by the provisions of those Options.)  If the 100% reimbursement provided above exceeds the amount recovered by the Covered Participant, less legal and attorney's fees incurred by the Covered Participant in obtaining such recovery (the Covered Participant's "Net Recovery"), <u>the Covered Participant shall reimburse the Plan the entire amount of such Net Recovery</u>.

<u>Id.</u> at 185–86 (emphasis added).  Similarly, pages fifty-five and fifty-six of <u>Your Employee Benefits</u>, the summary plan description, entitled "SUBROGATION (THIRD-PARTY RESPONSIBILITY)," provide that

> [i]f your illness or injury is caused by the actions of a third party, payment of your expenses is the responsibility of that third party.  If you receive any payment from the third party, the Company expects 100% reimbursement for any plan benefits paid.  However, if the payment you receive from the third party, less your attorneys' fees and other legal expenses, is not enough to reimburse benefit payments at 100%, you must reimburse the plan 100% of what is left after paying your attorneys' fees and other legal expenses.

<u>Id.</u> at 293.  The Ryans do not claim that Federal Express made any representations to them about the requirements of the subrogation provision other than those expressly set forth in the Plan.

5

The Ryans applied for benefits under the Plan after Mrs. Ryan gave birth to Theresa Ryan. Theresa Ryan was born on October 5, 1989, afflicted with cerebral palsy and severe brain damage. On February 27, 1991, the Ryans filed a malpractice action in the New Jersey Superior Court, Law Division, Union County. Before the Ryans recovered any money from the parties named in their malpractice action, they obtained over $190,000.00 under the Plan. The Ryans' malpractice case ultimately settled on January 18, 1994. The Ryans' recovery under the settlement agreement totaled $1,486,357.67. Of that sum, the Ryans' lawyers were awarded $273,635.77 in attorneys' fees, which amounted to 18.4% of the settlement award.

After the settlement was finalized, Federal Express asserted a subrogation lien against the Ryans' recovery for $191,793.65. The Ryans offered to pay only part of the subrogation lien, insisting that they be permitted to subtract a pro rata share of counsel fees they had incurred (18.4% of $273,635.77, or $35,290.03) in pursuing their malpractice claims in state court. Federal Express rejected the Ryans' proposal, asserting that the Plan unambiguously required the Ryans to remit the entire $191,793.65 because their net recovery far exceeded this amount.

On March 18, 1994, the Ryans filed a complaint in state court, in which they sought a judgment directing Federal Express to pay a pro rata share of their attorneys' fees. The Ryans contended that they were entitled under state law to deduct a pro rata share of reasonable attorneys' fees from the subrogation lien and that Federal Express was prohibited from denying them

6

benefits of any kind under the terms of the Plan. On March 30, 1994, Federal Express removed the case to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1441.

Both parties moved for summary judgment and the Ryans' arguments prevailed. The district court refused to enforce the Plan's subrogation clause, finding that the implementation of this provision would confer an "unjust benefit" upon Federal Express. App. at 25. Since ERISA is silent on the issue of subrogation agreements, the district court looked to common law principles to provide plaintiffs with the remedy it fashioned. In so doing, the court established a new federal common law right of recovery under ERISA; i.e., a right under federal common law to deduct from a subrogation lien a pro rata share of attorneys' fees incurred in pursuing a claim, despite explicit contrary language in the Plan's subrogation clause. Federal Express appeals the order of the district court granting summary judgment in favor of the Ryans.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. The district court exercised jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132. Our review of the order of the district court granting the Ryans' motion for summary judgment is plenary. Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund, 12 F.3d 1292, 1297 (3d Cir. 1993). Motions for summary judgment must be granted if "there is no genuine issue as

7

to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As there are no material facts in dispute, the disposition of this case rests upon whether the district court was empowered to tailor a common-law rule under ERISA to cover this situation.

## III.

ERISA requires that all employee benefit plans be "established and maintained pursuant to a written instrument," 29 U.S.C. §1102(a)(1), and that plan administrators act consistently with the Plan's written terms. Plan fiduciaries must discharge their "duties with respect to a plan solely in the interests of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan . . . ." Id. §1104(a)(1)(D). It is uncontroverted that the Plan met the requirements of ERISA. It is also undisputed that the Plan administrators did not violate their fiduciary responsibilities.

It is well established that federal courts have the power under appropriate circumstances to apply common-law doctrines in ERISA actions. The Supreme Court has instructed federal courts "to develop a `federal common law of rights and obligations under ERISA-regulated plans' . . . guided by principles of trust law." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110, 109 S. Ct. 948, 954 (1989) (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56, 107 S. Ct. 1549, 1558 (1987)). See also Heasley v. Belden & Blake Corp., 2 F.3d 1249, 1257 n.8 (3d Cir. 1993)

8

("_Firestone_ authorizes the federal courts to develop federal common law to fill gaps left by ERISA."). In deciding whether it is appropriate to apply principles of federal common law, "the inquiry is whether the judicial creation of a right . . . is `necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress.'" _Plucinski v. I.A.M. Nat'l Pension Fund_, 875 F.2d 1052, 1056 (3d Cir. 1989) (citations omitted). We have admonished district courts that they "should not easily fashion additional ERISA claims and parties outside congressional intent under the guise of federal common law." _Curcio v. John Hancock Mut. Life Ins. Co._, 33 F.3d 226, 235 (3d Cir. 1994). As the Supreme Court has explained, "[t]he authority of courts to develop a `federal common law' under ERISA . . . is not the authority to revise the text of the statute." _Mertens v. Hewitt Assocs._, 508 U.S. 248, ___, 113 S. Ct. 2063, 2070 (1993). The Supreme Court has held that "ERISA does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits. Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." _Curtiss-Wright Corp. v. Schoonejongen_, ___ U.S. ___, ___, 115 S. Ct. 1223, 1228 (1995). As we stated in _Hamilton v. Air Jamaica, Ltd._, 945 F.2d 74, 78 (3d Cir. 1991), _cert. denied_, 503 U.S. 938, 112 S. Ct. 1479 (1992), "[w]hile ERISA was enacted to provide security in employee benefits, it protects only those benefits provided in the plan. . . . `ERISA mandates no minimum substantive content for employee welfare benefit plans, and

9

therefore a court has no authority to draft the substantive content in such plans.'" (quoting Blau v. Del Monte Corp., 748 F.2d 1348, 1353 (9th Cir. 1984), cert. denied, 474 U.S. 865, 106 S. Ct. 183 (1985)). Furthermore, notwithstanding "the ennobling purposes which prompted passage of ERISA, courts have no right to torture language in an attempt to force particular results . . . the contracting parties never intended or imagined. To the exact contrary, straightforward language . . . should be given its natural meaning." Burnham v. Guardian Life Ins. Co. of Am., 873 F.2d 486, 489 (1st Cir. 1989). See Singer v. Black & Decker Corp., 964 F.2d 1449, 1452 (4th Cir. 1992) ("[R]esort to federal common law generally is inappropriate when its application would . . . threaten to override the explicit terms of an established ERISA benefit plan.").

In Van Orman v. American Insurance Co., 680 F.2d 301 (3d Cir. 1982), we discussed the question of what showing a party (who would otherwise be bound by the language of the controlling benefits plan) must make in order to establish a viable federal common-law right premised upon unjust enrichment. Van Orman involved a dispute over who was entitled to obtain an actuarial surplus of approximately $12,000,000.00 upon the termination of a benefits plan. The plan provision specifically provided that the employer "shall be entitled to the net assets of the Trust Fund which shall remain by reason of the erroneous actuarial computation during the life of the plan." Id. at 304. When the plan was finally terminated, the employer sought to enforce its right to obtain the actuarial surplus. The covered employees

10

objected, arguing that a number of booklets and letters that they had received from their employer had indicated that any actuarial surplus would be held in trust for the employees and would become their property upon the termination of the plan.

In the ensuing litigation the Van Orman plaintiffs asserted, inter alia, that if defendants were permitted to retain the actuarial surplus, as provided by the plan, they would be unjustly enriched. The district court found, however, that any contrary representations that had been made in the booklets and letters sent to the plaintiff employees were not binding upon defendants, and hence not part of the plan, because they had contained disclaimers asserting that only the actual plan document was to govern the rights of employees. We affirmed the finding of the district court that the booklets and letters were not part of the plan document. Id. at 306-07. Since the plan expressly provided that the employer was entitled to the entire actuarial surplus, we concluded that "the doctrine of unjust enrichment is inapplicable under New Jersey law and as a matter of federal common law. . . [because] recovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties." Id. at 310.

In rejecting the plaintiffs' argument in Van Orman that the case warranted the application of federal common law, we described the heavy burden that plaintiffs must satisfy in order to nullify a bargained-for plan provision on the ground of unjust enrichment. The court observed that

11

> [w]here Congress has established an extensive regulatory network and has expressly announced its intention to occupy the field, federal courts will not lightly create additional rights under the rubric of federal common law. . . . We are particularly reluctant to fashion a federal common-law doctrine of unjust enrichment when such a right would override a contractual provision. . . . The existence of a contract . . . requires a particularly strong indication that the unjust enrichment doctrine will vindicate an important statutory policy. . . . [D]espite the extensive regulatory scheme governing pension plans, Congress left many matters to the discretion of the parties. The Supreme Court has emphasized the primacy of plan provisions absent a conflict with the statutory policies of ERISA.

Id. at 312–13. Accord Luby v. Teamsters Health, Welfare, & Pension Trust Funds, 944 F.2d 1176, 1186 (3d Cir. 1991); cf. Hamilton, 945 F.2d at 78 (ERISA's disclosure provisions "permit[] employees to bargain further or seek other employment if they are dissatisfied with their benefits.").

As with many other substantive terms of welfare plans, ERISA says nothing about subrogation provisions. ERISA neither requires a welfare plan to contain a subrogation clause nor does it bar such clauses or otherwise regulate their content. See Land v. Chicago Truck Drivers, Helpers & Warehouse Workers Union (Independent) Health and Welfare Fund, 25 F.3d 509, 514 (7th Cir. 1994). The language of the subrogation provision at issue here unambiguously requires the Ryans to pay back all the money they received from the Plan. Since the Ryans have failed to establish that the Plan "conflict[s] with the statutory policies of ERISA" and have similarly failed to show that the common law right at issue "is necessary to . . . effectuate a statutory policy," Van

<u>Orman</u>, 680 F.2d at 312-13, we must reject the Ryans' attempt to establish the common law right they would have us recognize.

The Ryans' argument that the Plan would be unjustly enriched if it was not required to pay a pro rata share of their attorney's fees is entirely without merit. "Enrichment is not `unjust' where it is allowed by the express terms of the . . . plan." <u>Cummings v. Briggs & Stratton Retirement Plan</u>, 797 F.2d 383, 390 (7th Cir.) (citing <u>Craig v. Bemis Co.</u>, 517 F.2d 677, 684 (5th Cir. 1975)), <u>cert. denied</u>, 479 U.S. 1008, 107 S. Ct. 648 (1986). Indeed, it would be inequitable to permit the Ryans to partake of the benefits of the Plan and then, after they had received a substantial settlement, invoke common law principles to establish a legal justification for their refusal to satisfy their end of the bargain.

**IV**.

The subrogation provision at issue must be enforced as written and requires that the disputed funds be remitted to Federal Express. The February 15, 1995, order of the district court will be reversed and this matter remanded to the district court with instructions to enter an order granting the cross-motion of Federal Express for summary judgment.

13