**Sharon WARD and Willie Lee Ward, Plaintiffs,**

v.

**WAL–MART STORES, INC. ASSOCIATES HEALTH & WELFARE PLAN, Defendant.**

No. 1:96–CV–866.

United States District Court,
W.D. Michigan,
Southern Division.

Feb. 6, 1998.

---

James T. Heos, Church, Kritselis, Wyble & Robinson, P.C., Lansing, MI, for Plaintiffs.

John M. Roels, Wheeler Upham, P.C., Grand Rapids, MI, for Defendant.

## OPINION

ROBERT HOLMES BELL, District Judge.

On August 3, 1994, Plaintiff Sharon Ward was seriously injured in an automobile accident. Because her no-fault automobile insurance had lapsed, she turned to Defendant Wal–Mart Stores, Inc. Associates Health & Welfare Plan, her employer's ERISA Plan, for payment of her medical bills in the amount of $101,526.56.

Plaintiff and her husband filed a third-party automobile negligence action against City of Lansing and received a joint settlement in the amount of $200,000. In light of the Plan's assertion of a lien in the amount of $101,526.56, the Wards filed this action seeking a declaratory judgment that the Plan was not entitled to recover medical benefits paid by the Plan from the Wards' settlement which, as a matter of Michigan no-fault law, did not cover medical expenses.

On June 13, 1997, this Court entered an order declaring that although the Plan did not have a right to recover medical benefits paid under the Plan's subrogation provision, the Plan did have a right to recover medical benefits paid under the Plan's reimbursement provision. The Court did not determine the extent of the Plan's right to reimbursement. Plaintiffs appealed the judgment of liability. The matter was subsequently remanded for a determination of damages. That is the issue currently before this Court.

Resolution of the damages issue requires a two-step analysis. The Court must determine first what portion of the settlement is allocable to Mrs. Ward, and second, whether the Plan is entitled to the whole amount of benefits paid, or whether the amount should be reduced to reflect attorney fees and costs.

Mrs. Ward was the only one in the car at the time of the automobile accident. She suffered a separation of her collar bone, broken ribs, fractures of her pelvis and knee. She had a pin put through her knee for traction and she had hardware installed in her hip. She had internal bleeding and her spleen was removed. In the course of her hospitalization she developed pneumonia and a collapsed lung. A tube was installed to draw out the fluid that had built up in her lung. Since the accident she has suffered migraine headaches and memory loss. Mr. Ward did not suffer any physical injuries as a result of the accident. He did suffer emotionally and financially. He attended to Mrs. Ward's daily needs, to their children, and to household responsibilities for about a year after the accident. Because of the time he spent attending to his wife, he lost his job. Although Mrs. Ward was injured worse than

her husband physically, she testified that emotionally she and her husband suffered equally.

Because Mrs. Ward suffered physical injuries in addition to the emotional damages, there is no question that her portion of the damages is more than half of the settlement amount. Given the severity of her physical injuries, the Court also finds, as a matter of law, that her portion of the settlement amount is at least as much as the Plan's asserted lien of $101,526.56.

The Court turns, then, to the issue of whether the Plan is entitled to the full amount of its lien, or whether this amount should be reduced to reflect attorney fees and costs.

The Plan contends that this Court should follow *Ryan v. Federal Express Corp.,* 78 F.3d 123 (3d Cir.1996), and fully reimburse the Plan for medical benefits paid, without a pro rata reduction for attorney's fees.

The Wards contend that the Plan must share the attorney fees and costs incurred in settling with the third party because if it is allowed to recover its entire lien, it will be unjustly enriched.

In *Ryan* the Third Circuit declined to apply the doctrine of unjust enrichment where the plan unambiguously required full reimbursement. The Third Circuit rejected the Ryan's argument that the Plan would be unjustly enriched if it was not required to pay a pro rata share of their attorney's fees. The court reasoned that enrichment is not "unjust" where it is allowed by the "express terms of the plan." *Id.* at 127 (citations omitted).

The Federal Express ERISA Plan at issue in *Ryan* provided as follows:

if benefits are paid on account of an illness resulting from the intentional actions or from the negligence of a third party, the Plan shall have the right to recover,

against any source which make payments or to be reimbursed by the Covered Participant who receives such benefits, *100% of the amount of covered benefits paid . . . . If the 100% reimbursement provided above exceeds the amount recovered by the Covered Participant, less legal and attorney's fees* incurred by the Covered Participant in obtaining such recovery (the Covered Participant's "Net Recovery"), the Covered Participant shall reimburse the Plan the entire amount of such *Net Recovery.*

*Id.* at 124 (emphasis added). The summary plan description also provided that "[i]f you receive any payment from the third party, the Company expects 100% reimbursement for any plan benefits paid." *Id.* at 125.

In *Bollman Hat Co. v. Root,* 112 F.3d 113, 116–17 (3rd Cir.1997), the Third Circuit held that the phrase "any payments" and a provision for subrogation of "all . . . rights of recovery" were "materially identical" to the "100%" language in *Ryan.*[1]

A widely recognized principle in ERISA law is that although federal common law fills the gaps of ERISA and assists in the interpretation of ERISA plans, federal courts will not apply common law theories to alter the express terms of written benefit plans. *See, Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Member Services Life Ins. Co. v. American Nat. Bank,* 130 F.3d 950, 957–58 (10th Cir. 1997); *Ryan,* 78 F.3d at 126; *Health Care Controls, Inc. v. Isbell,* 1997 WL 705073 (6th Cir. Nov. 6, 1997) (unpublished).

*Ryan* and *Bollman* exemplify the application of this principle and are correctly decided on their facts. They do not end the inquiry in this case, however, because the Wal–Mart Plan at issue in this case differs materially from the Plans at issue in *Ryan* and *Bollman.* The Wal–Mart Plan reimbursement provision provides as follows:

---

1. The Bollman plan requires reimbursement of "any payments" made by the Plan to a participant, and provides for subrogation to "all [of Root's] rights of recovery." As used in the plan, the words "any" and "all" both mean "the whole of" or "every." Black's Law Dictionary 74, 94 (6th ed.1990). Notwithstanding the universal scope of "any" and "all," Root attempts to distinguish the Bollman plan, which called for "100%" reimbursement. We see no distinction. On this point, we find the Ryan plan and the Bollman plan to be materially identical and the Bollman plan to be unambiguous.

112 F.3d at 116–17.

The Plan shall have the right to ... recover benefits previously paid by the PLAN to the extent of any and all of the following:

A. Any payment resulting from a judgment or settlement, or other payment or payments, made or to be made by any person or persons considered responsible for the condition giving rise to the medical expense....

Plan Appendix A, Group Health Plan document, Article VIII, p. 50. Under the Wal–Mart Plan the Plan has the right to "recover benefits ... to the extent of ... any payment resulting from a judgment or settlement." In contrast to the language considered in *Ryan* and *Bollman,* the right to recover "benefits" in the Wal–Mart Plan is not preceded by "100%" or by "any" or "all." The phrase "any and all" in the Wal–Mart Plan refers to the several listed categories of payments (judgments or settlements, vehicle insurance, and business and homeowners medical liability insurance), not to the extent of the settlement. The Wal–Mart Plan language establishes the Plan's general entitlement to be reimbursed, but fails to specify unambiguously the extent of that reimbursement. *Accord Wal–Mart Stores, Inc. Associates' Health and Welfare Plan v. Bond,* 1997 WL 255527 (E.D.Pa. May 8, 1997), motion for reconsideration denied, 1997 WL 330388 (E.D.Pa. June 5, 1997).

■ Where a plan is silent on the issue of attorney fees and is ambiguous on the extent of reimbursement required, the court is required to construe the clause in accordance with federal common law principles, including the principle of unjust enrichment. *Waller v. Hormel Foods Corp.,* 120 F.3d 138, 141 (8th Cir.1997). *See also Carpenter v. Modern Drop Forge Co.,* 919 F.Supp. 1198, 1204–06 (N.D.Ind.1995); *Serembus v. Mathwig,* 817 F.Supp. 1414, 1423 (E.D.Wis.1992); *Dugan v. Nickla,* 763 F.Supp. 981 (N.D.Ill.1991). As noted in *Waller,* a plan's silence on the issue of attorney's fees is not easily construed:

It may mean that the Plan should always receive 100% of its claim for reimbursement, even if that produces unfair results in a particular case, so that the Plan retains maximum control over efforts to recover from third parties. But it may also mean that the Plan will pay reasonable fees and expenses so as to encourage beneficiaries to press claims to which the Plan will be partially subrogated.

120 F.3d at 141. In *Waller* the court affirmed the district court's decision to reduce the plan's recovery by the amount of a reasonable attorney's fee. *Id. See also McIntosh v. Pacific Holding Co.,* 120 F.3d 911, 912 (8th Cir.1997) (federal common law governs where plan is silent on subject of attorney fees).

■ Because the Wal–Mart Plan is silent on the issue of attorney fees, it is ambiguous, and will be construed consistent with federal common law principles of unjust enrichment.

This Court has previously ruled that the Wal–Mart Plan's subrogation provisions did not allow the Plan to recover any benefits from the Wards' settlement with the City of Lansing because the City of Lansing was not a third party "who may be liable for the amount of such benefits covered or paid by the Plan." Because the Plan had no right to subrogate itself to the Wards' claims against the City of Lansing, but for the Wards' pursuit of their claims against the City of Lansing for non-economic damages, there would have been no fund from which the Plan could have recovered.

Moreover, in this case, if the Plan were construed to allow full recovery of the benefits paid without regard to attorney fees, it could lead to the result that the Plaintiff would be liable to the Plan for more than the Plaintiff actually recovered. The Plan in this case does not have a provision as in *Ryan* for what happens when the net recovery is less than the amount of the benefits paid by the Plan. Accordingly, if Plaintiffs in this case had settled for $150,000, they would owe $50,000 in attorney fees, and would be liable to the Plan for $101,526.56. In other words, after paying the Plan $100,000 from the settlement, they would still be required to pay $1526.56 out of their own pockets. Only the Plan would be benefitted, and Plaintiffs would actually lose money as a result of their efforts. This would be an absurd result, and

it is not a result contemplated by the Plan language.

Under the circumstances of this case, the Court finds that the Plan is not entitled to full recovery of medical expenses paid. The equities in this case militate in favor of requiring the Plan to absorb its pro-rata share of attorney fees and costs. Plaintiffs are only obligated to reimburse the Plan for the benefits paid less a pro-rata reduction for attorney's fees and costs.

There is no dispute that the total settlement was $200,000, costs were $10,353.27, and the attorney fees were based on one-third of the settlement after deduction of the costs. The Court finds that the Plan's reimbursement from the settlement should be calculated as follows:

| | |
|---|---|
| Medical benefits paid: | $101,526.56 |
| Less P1/2 costs: | $5,176.64 |
| | $96,349.92 |
| Less 1/3: | $32,116.64 |
| Total Reimbursement: | $64,233.28 |

In summary, the Plan is entitled to recovery of $64,233.28 from the Ward's settlement with the City of Lansing.

An order consistent with this opinion shall be entered.