John DEPENBROCK, Plaintiff,

v.

CIGNA CORPORATION and Cigna Pension Plan, Defendants.

No. CIV.A.01–6161.

United States District Court,
E.D. Pennsylvania.

July 31, 2003.

Stephen R. Bruce, Washington, DC, William M. O'Connell, III, Barbin & O'Connell, Rockledge, PA, for Plaintiff.

Joseph J. Costello, Morgan, Lewis & Bockius, LLP, Tamsin J. Newman, Morgan, Lewis & Bockius, LLP, Philadelphia, PA, for Defendants.

## MEMORANDUM

ROBERT F. KELLY, Senior District Judge.

Plaintiff, John Depenbrock ("Depenbrock"), filed this civil action against his employer, Defendant CIGNA ("CIGNA"), under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sections 1001–1461, alleging wrongful denial of his ERISA benefits claim and breach of fiduciary duty and disclosure problems in conjunction with the claim denial. Presently before this Court are the Cross Motions for Summary Judgment filed by Plaintiff and Defendant. Each party moves for judgment on all claims.

## I. BACKGROUND

Plaintiff John Depenbrock began his employment with Defendant CIGNA in 1983 in its Retirement and Investment Services Department. Depenbrock's primary function at CIGNA was to sell investment management services to retirement plans. In 1997, Depenbrock was a participant in CIGNA's defined benefit

pension plan ("the Plan") under "Part A".[1] On January 2, 1998, Depenbrock resigned from CIGNA and began employment at Lazard Asset Management, however, he returned to CIGNA on November 30, 1998. On the day he returned to CIGNA, Depenbrock was placed into CIGNA's new cash balance retirement plan ("Part B"). Pursuant to Section 2.4 of the Plan, the Rehire Rule, his prior benefit in the defined benefit pension plan, Part A, was converted into an opening account balance in Part B. Depenbrock contended that the Rehire Rule was improperly applied to him and that he should have resumed participation in Part A. By way of a letter from his attorney, Stephen Bruce, Esq., Depenbrock filed a claim with the Office of the Plan Administrator pursuant to the Plan's review procedure on December 8, 2000. His claim was denied by John Arko, Director of Retirement Benefits, on March 20, 2001 in a letter which addressed each of Depenbrock's claims. Stewart Beltz, the Plan Administrator, denied Depenbrock's appeal on October 9, 2001.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, the court must draw all reasonable inferences in favor of the non-movant. *Meyer v. Riegel Prods. Corp.*,

720 F.2d 303, 307 n. 2 (3d Cir.1983). A non-movant may not, however, "rest upon mere allegations, general denials, or ... vague statements." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir.1991). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 242, 106 S.Ct. 2505. Summary judgment must be granted if no reasonable trier of fact could find for the non-moving party. *Id.* "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "When the record is such that it would not support a rational finding that an essential element of the non-moving party's claim or defense exists, summary judgment must be entered for the moving party." *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 341 (3d Cir.1990).

## III. DISCUSSION

### A. The Amendment to the Rehire Rule

The Supreme Court has held that "ERISA does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits. Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S.

---

1. Part A consisted of a two percent formula for participants hired before 1989. As a result, participants in Part A were typically long-service employees.

73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94, (1995)(internal citations omitted). "ERISA requires that all employee benefit plans be 'established and maintained pursuant to a written instrument,' 29 U.S.C. § 1102(a)(1), and that plan administrators act consistently with the Plan's written terms." *Ryan v. Federal Express Corp.*, 78 F.3d 123, 126 (3d Cir.1996). Section 402(b)(3) of ERISA, 29 U.S.C. § 1102(b)(3), which is the provision of ERISA implicated in Depenbrock's claim, requires companies to provide a formal procedure for amending its plan. However, the Supreme Court has established a *de minimus* standard for compliance with Section 402(b)(3). *See Curtiss–Wright,* 514 U.S. 73, 115 S.Ct. 1223, 131 L.Ed.2d 94. Specifically, the plan must include a procedure for amending the plan and a procedure for identifying the persons who have the authority to amend the plan. *Id.* at 82, 115 S.Ct. 1223. There is no dispute that the Plan contained a valid amendment procedure. Depenbrock challenges Defendant's procedure used in amending the Plan's Rehire Rule.

Depenbrock alleges that the amendment to Section 2.4 of the Plan, the Rehire Rule, was enacted in violation of Section 402(b)(3) of ERISA and incorrectly applied to him for two reasons. Depenbrock first contends that a July 23, 1997 Resolution by the Peoples Resources Committee of the Board of Directors ("PRC"), did not authorize CIGNA's Chief Executive Officer ("CEO"), Mr. Taylor ("Taylor"), to move Depenbrock into the cash balance plan because the Resolution of PRC expressly excepted employees, such as Mr. Depenbrock, who were "currently accruing benefits" and who had more than 45 age and service points from being transferred into the cash balance plan. Therefore, since Depenbrock satisfied the criteria to be excepted from conversion into the cash balance plan, Depenbrock con-

tends that Taylor was unauthorized to convert Depenbrock to the cash balance plan. Second, Depenbrock asserts that even if the July 23, 1997 Resolution did authorize the amendment, CIGNA's CEO did not "approve and execute" the amendment, in compliance with its written amendment procedure, until December 21, 1998. Accordingly, Plaintiff argues that the amendment cannot be applied to him retroactively. Defendant counters that the Resolution of the PRC in July 1997 authorized Taylor to amend the Rehire Rule and that Taylor's approval of the amendment was proper.

In order to address Depenbrock's arguments, I must closely examine all pertinent events surrounding the adoption of the Rehire Rule. *See Id.* (holding that a fact-intensive inquiry should be done in order to determine whether an amendment was properly adopted pursuant to an amendment procedure). First, I must examine whether Taylor was properly authorized to amend the Rehire Rule. Second, I must determine whether CIGNA complied with its amendment procedure as set forth in the Plan when it amended the Rehire Rule.

### 1. *Taylor Had the Authority to Adopt the Amendment to the Rehire Rule*

█ The Plan contained the following methods for amendment: (1) a Board of Directors Resolution; (2) a resolution of the Peoples Resources Committee of the Board of Directors; or (3) a written instrument approved and executed by one or more duly authorized officers of CIGNA. On July 23, 1997, the PRC adopted a Resolution, the pertinent portion of which states:

RESOLVED, That, the Corporation's Chief Executive Officer ("CEO") is authorized to adopt amendments to the

CIGNA Pension Plan (the "Plan"), to be effective January 1, 1998 (or a later date if deemed appropriate by the CEO), as necessary or appropriate to:

- Change the Plan's current "final average pay" benefit accrual formula to a "cash balance" formula for all eligible participants under the Plan except those who (1) are currently accruing benefits under the formula in effect on December 31, 1998, and (2) whose combined age plus years of credited service ("Service") is 45 or more as of December 31, 1997.

Plaintiff contends that the July 23, 1997 Resolution of the PRC did not authorize Taylor to adopt the amendment to the Rehire Rule since the Resolution did not specifically mention the amendment to the Rehire Rule, but, rather, was a general allowance for Taylor to amend the Plan. Therefore, Depenbrock argues that Taylor was not authorized to move him into the cash balance plan since Plaintiff met the above-listed criteria to be excepted from the new cash balance plan.

Plaintiff's argument fails for two reasons. First, the July 23, 1997 Resolution did authorize Taylor, the CEO, to adopt the Rehire amendment as it specifically authorized Taylor "to adopt amendments to the CIGNA Pension Plan (the "Plan"), to be effective January 1, 1998 (or a later date if deemed appropriate by the CEO), as necessary." Taylor's authorization to amend the Plan was given to him by the PRC Resolution in full compliance with the Plan's amendment procedure. Further, Taylor was already authorized to adopt the amendment to the Rehire Rule since, a year prior, on July 24, 1996, the PRC had adopted a Resolution entitled "Delegation of Authority to Chief Executive Officer" which gave Taylor "all authority to adopt,

modify and terminate any employee benefit plans." Accordingly, Taylor had the authority to adopt amendments to the Plan in order to create Plan B, the cash balance plan, one of which was the Rehire Rule.

### 2. *The Adoption of the Amendment to the Rehire Rule*

Plaintiff next argues that even if Taylor was authorized to amend the plan, he did not approve and execute the amendment, in accordance with Defendant's own procedural requirements, until December 21, 1998. Defendant contends that Taylor properly adopted the amendment to the Rehire Rule on October 31, 1997, when he executed Amendment Numbers 2 and 4 to the Plan, since it was intended that his execution of the amendments also signified Taylor's approval of the Final Plan Design (which specified the new Rehire Rule) which was part of a packet delivered to Taylor for his approval. Defendant also argues that even if Taylor's signing of Amendment Numbers 2 and 4 did not constitute his approval of the Rehire Rule that it was properly adopted pursuant to the doctrine of ratification.

### a. *The Events Surrounding the Amendment to the Rehire Rule*

The following facts are not in dispute. In a memorandum to the PRC dated July 15, 1997, Mr. Donald Levinson ("Levinson"), Chief Human Resources Officer at CIGNA, outlined the proposed changes to the Plan. (Def.'s Mot. Summ. J., Ex. H). Overall, the memorandum recommended that the PRC "authorize an amendment to the CIGNA Pension Plan effective January, 1998 to convert the existing Defined Benefit plan to a Cash Balance plan for most participants." (*Id.*). It further explained that "Participants in the Tier 1[2]

---

**2.** "Tier 1" is synonymous with Plan A which

Depenbrock participated in until his depar-

portion of the CIGNA Pension Plan (such as Mr. Depenbrock) will continue under the current formula **until termination or retirement.**" (*Id.*)(emphasis added). On July 23, 1997, the PRC held a meeting at which the proposal to create the cash balance plan was approved. Levinson, Taylor, and Gerald Meyn, the Vice President of Benefits Administration, were present at the PRC meeting. Pursuant to the Resolution, the PRC authorized CIGNA's CEO, Taylor, "to adopt amendments to the CIGNA Pension Plan to be effective January 1, 1998." (Def.'s Mot. Summ. J., Ex. I).

On November 4, 1997, Levinson sent correspondence to Taylor concerning the new cash balance plan. The cover letter stated: [a]ttached are (1) a summary of key features of the new cash balance pension formula which, subject to your approval, will become effective on January 1, 1998 and (2) Amendments No. 2 and No. 4 to the CIGNA Pension Plan. (Def.'s Mot. for Summ. J., Ex. P). The letter further stated that "the cash balance formula design summary is just that. In the first quarter of 1998, I expect to present for your formal approval a restated Plan document containing all the necessary legal language ... It will be retroactively effective as of January 1, 1998." (*Id.*). The summary of the key features of the cash balance plan consisted of a four page document entitled "CIGNA Cash Balance Pension Final Plan Design" which set January 1, 1998 as the Plan change effective date. The "Eligibility" section included the new Rehire Rule which stated that "all employees rehired to CIGNA companies after 1997 will participate in this Plan. In most cases proper benefits will be converted to the new Plan." (*Id.*). Taylor executed the

Amendment Numbers 2 and 4 which were attached to the memorandum on October 31, 1997.

On November 28, 1997, an interoffice memorandum was sent to all CIGNA benefit managers and human resources representatives which set forth the new rules for the new plan. (Def.'s Mot. for Summ. J., Ex. R). The memorandum specifically explained, in two different sections, that employees rehired after 1997 would participate in the new cash balance plan. (*Id.*). In December 1997, CIGNA distributed correspondence entitled "Signature Benefits Information Kit" to all participants, including Mr. Depenbrock. (*See* Def.'s Mot. for Summ. J., Ex. T). The kit explained the new Rehire Rule in the "Eligibility and Enrollment" section as follows: If you leave CIGNA companies and are reemployed after December 31, 1997, you will not participate in the Pension Plan when you return. Instead, you will be eligible to participate in the new CIGNA Retirement Plan ... If you are reemployed, the benefit you earned under the Pension Plan will be converted into an opening balance in the CIGNA Retirement Plan. (*Id.*).

In October 1998, CIGNA issued a Summary Plan Description for Part B of the Plan which, again, described the new Rehire Rule. (Def.'s Mot. for Summ. J., Ex. X). Lastly, on December 21, 1998, Taylor signed the Formal Plan Documents for both Part A and Part B of the new cash balance plan. (Def.'s Mot. for Summ. J., Exs. V and W). Both documents clearly explained that after January 1, 1998, any rehired CIGNA employee would only be eligible to participate in the new Plan.[3]

---

ture from CIGNA.

**3.** The Part A Plan Document stated the following in Section 2.4 entitled "No Resumption of Participation Upon Re–Employment": A Participant who has a severance from employment with CIGNA Corporation ... and who subsequently is re-employed by CIGNA

Significantly, Depenbrock was rehired on November 30, 1998. Therefore, as set forth in the Formal Plan Documents, the consequence of Depenbrock leaving CIGNA on January 2, 1998 made him only eligible to participate in the new cash balance plan.

### b. Cigna Complied with Section 402(b)(3)'S Procedural Requirements

In *Curtiss–Wright*, a group or retirees claimed that their employer had improperly amended their benefit plan in violation of ERISA Section 402(b)(3). Specifically, the Supreme Court had to determine whether Curtis–Wright's reservation clause in its employee benefit plan complied with ERISA's Section 402(b)(3) by establishing a procedure for amending its plan as well as identifying any individuals that possessed the authority to amend the plan. *See Curtiss–Wright*, 514 U.S. 73, 115 S.Ct. 1223, 131 L.Ed.2d 94. Once the Court determined that Curtis–Wright had a valid amendment procedure, it was remanded to the Third Circuit to determine whether Curtis–Wright had complied with its procedure, thereby satisfying Section 402(b)(3). Ultimately, the Third Circuit decided that those individuals with the authority to amend the plan had, in fact, amended that plan in accordance with its procedural requirements as set forth in Curtis–Wright's benefit plan. The Supreme Court's analysis in *Curtiss–Wright* is very instructive in the case *sub judice* as I must also determine whether Defendant complied with its own amendment procedures thereby complying with Section 402(b)(3) of ERISA.

In its analysis of Section 402(b)(3)'s procedural requirements, the *Curtiss–Wright* Court emphasized that while one of ERISA's central goals is to enable plan

beneficiaries to learn their rights and obligations at any time, this goal is accomplished through the "reporting and disclosure" requirements of 29 U.S.C. Sections 1021–1031, not through Section 402(b)(3). *Curtiss–Wright*, 514 U.S. at 83, 115 S.Ct. 1223. Rather, the Court explained that Congress may have had plan administrators in mind when it enacted Section 402(b)(3) which may be gleaned by the fact that it is found in the "fiduciary responsibility" section of ERISA. *Id.* at 82, 115 S.Ct. 1223. The Court further opined that while the primary purpose of Section 402(b)(3) is to ensure that every plan has a workable amendment procedure, it serves other goals as well, such as, without an amendment procedure, the plan would be unamendable under the standard trust law principles, which are frequently used in the context of ERISA interpretation. *Id.*; *see also Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110–11, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (noting in the context of determining the standard of review under ERISA for actions for benefits, "we are guided by principles of trust law"). Section 402(b)(3) was also intended for plan beneficiaries to give special consideration to plan amendments as they are serious events. *Id.* Lastly,

> having an amendment procedure enables plan administrators, the people who manage the plan on a day-to-day level, to have a mechanism for sorting out, from among the occasional corporate communications that pass through their offices and that conflict with the existing plan terms, the bona fide amendments from those that are not.

*Id.*

Plaintiff contends that CIGNA did not comply with its own amendment procedure

---

Corporation or a Related Company shall not again become eligible for active participation

in Part A. Such a Participant may become eligible for active participation in Part B.

because CIGNA did not properly adopt the Amendment to the Rehire Rule until December 21, 1998 when Taylor signed the Formal Plan Documents. Therefore, Depenbrock argues that he should not have been placed into the cash balance plan upon his return to CIGNA on November 1998. Rather, he should have resumed participation in Plan A. CIGNA argues that Taylor's execution of Amendments 2 and 4 also signified his approval of the Rehire Rule since that was the intention of Levinson as stated in the attached cover letter to the memorandum. While Depenbrock is correct that the Formal Plan Documents for both Part A and Part B of the new Plan were signed on December 21, 1998, this fact is not necessarily fatal to the survival of the Amendment to the Rehire Rule.

 "ERISA follows standard trust law principles in dictating only that whatever level of specificity a company ultimately chooses, in an amendment procedure or elsewhere, it is bound to that level." *Id.* at 85, 115 S.Ct. 1223. However, under corporate law principles, an improperly authorized amendment may also be ratified *ex post* by subsequent acts.[4] *Id.* Ratification of an act may be express or implied, such as follows:

> [i]f the officers or the agents of a corporation assume to act for the corporation without any authority at all, or if they exceed their authority or act irregularly, and the act is one that could have been authorized in the first instance by the shareholders, board of directors or subordinate officers, as the case may be, it may be expressly or impliedly ratified by them, and thus be rendered just as binding, except as to intervening rights of third persons, as if it had been authorized when done, or done regularly. The ratification of an unauthorized act of an agent is equivalent to original authorization and confirms that which was originally unauthorized.

2 W. Fletcher, Cyclopedia of the Law of Private Corporations § 752; *see also Hannigan v. Italo Petroleum Corp. of Amer.,* 47 A.2d 169 (Del.1945) (holding that a corporation officer's unauthorized act, duly and properly ratified, with knowledge of facts, by authority with would have been completely empowered to authorize the act in the first instance, becomes binding upon the corporation). Under general corporate law principles, a validly accomplished ratification must be given retroactive effect to cure the otherwise unauthorized actions. *Michelson v. Duncan,* 407 A.2d 211, 219 (Del.1979). Therefore, the ratification will make the new provision valid as of the original decision date.

In *Frank v. Colt Industries, Inc.,* 910 F.2d 90 (3d Cir.1990), the Third Circuit used the principles of trust law to determine whether, as in this case, the employer properly amended its benefit plan by examining the minutes of a meeting of the company officers. Since Colt, the employer, did not have a method for amending its plan, the *Frank* Court looked to the "manifestation of intent" as supplied by the meeting minutes to determine whether Colt intended to amend its plan. Using the trust law principles, the *Frank* Court explained:

> [t]he intention of the settlor which determines the terms of the trust is his intention at the time of the creation of the trust and not his subsequent intention. Two points are thus clear: First, in order for a manifestation of intention to *constitute part of the trust,* there must

---

4. In its remand, the Court instructed the Third Circuit to consider whether the actions taken by Curtis–Wright to terminate its plan would ratify an unauthorized amendment. *Curtiss–Wright,* 514 U.S. at 85, 115 S.Ct. 1223.

be an intention to *create* a trust or an amendment thereto. There is a fundamental difference between actions that are intended to create or amend a trust and actions that are merely intended to construe an existing trust; only the former are "terms of the trust." Second, this relevant intent is the settlor's intent at the time of the creation or the amendment. When a settlor states "I intended to do Y" *after* the trust has been created, that statement does not alter the terms of the trust, although it may be relevant in construing the terms of the trust if they are ambiguous. In sum, while the intent of the settlor is a touchstone for construing a trust, only a specific type of manifestation of intent can constitute a term of the trust.

*Frank,* 910 F.2d at 98 (internal citations and quotation marks omitted); *see also Deibler v. United Food and Commercial Workers' Local Union 23,* 973 F.2d 206 (3d. Cir.1992) (holding that a benefit plan may be amended only through a manifestation of intention).

■ Based upon the foregoing facts and using the above-stated principles, Taylor manifested his intent to amend the Rehire Rule, effective January 1, 1998, by his execution of the amendments attached to the November 4, 1997 correspondence. To reiterate, the pertinent sections of the cover letter to the memorandum stated "[t]he cash balance formula design summary is just that. In the first quarter of 1998, I expect to present for your formal approval a restated Plan document containing all the necessary legal language. My staff and Tom's are working on the document. It will be retroactively effective as of January 1, 1998." (Def.'s Mot. for Summ. J., Ex. P). Therefore, the correspondence informed Taylor that the attached summary of the cash balance plan, including the new Rehire Rule, would become effective Janu-

ary 1, 1998, and that he would be given another document to sign which would include those terms plus any additional necessary legal terms. Taylor signed the attached amendments. Further, Taylor's execution of Amendment Number 4 was critical to the creation of the cash balance plan since it froze the pension benefit accruals of the participants that would be converted to the cash balance plan effective December 31, 1997, the terms of which, including the Rehire Rule, were summarized in the four pages attached to the memorandum.

Each of the documents mentioned in the facts surrounding the adoption of the Rehire Rule clearly reflected the intention of CIGNA to amend the Rehire Rule. Taylor's actions subsequent to his signing of Amendments 2 and 4 constituted a ratification of the amendment both express and implied. Taylor did not voice any opposition to the Rehire Rule as stated in the "Signature Benefits Kit" which was distributed to participants, including Depenbrock, nor did he object to the Rehire Rule in the Summary Plan Description. Taylor expressly ratified the Rehire Rule by executing the formal amendment to the plan in December 1998 in accordance with the amendment procedure set forth in the Plan which specified that it could be amended by "written instrument approved and executed by one or more duly authorized officers of CIGNA." Accordingly, I find that Taylor undisputedly intended to amend the Plan's Rehire Rule.

In Conclusion, CIGNA has properly amended the Rehire Rule in compliance with Section 402(b)(3) of ERISA. While this Court acknowledges that the conversion of Depenbrock's benefit plan from Plan A to Plan B is not necessarily to his financial benefit, it does not change the outcome that the validly adopted Rehire Rule was correctly applied to Depenbrock

upon his return to CIGNA. Accordingly, I will enter summary judgment in favor of CIGNA on Count One of Plaintiff's Complaint.

### B. Notice and Disclosure

■ In Counts Two and Three, Depenbrock alleges that CIGNA failed to disclose that it was changing the Rehire Rule in a manner calculated to be understood by the average participant. In support of his claim, Depenbrock argues that the summary plan description ("SPD") did not adequately disclose the new Rehire Rule in a manner calculated to be understood by the average participant. CIGNA counters that Depenbrock's reliance on the SPD is misplaced and that it satisfied the precepts of ERISA when it distributed the Signature Benefits Retirement Information Kit in December 1997. Defendant is correct in that Depenbrock's reliance on the SPD is misplaced.

■ "Under ERISA's notice and disclosure requirements, the administrator of an employee benefit plan must furnish participants and beneficiaries with a readily understandable summary of any material modifications in accordance with the notice and disclosure requirements contained in § 1024(b)(1)." *Lettrich v. J.C. Penney,* 213 F.3d 765, 769 (3d Cir.2000). Section 1024(b)(1) requires " 'a summary description of such modification or change … [to] be furnished not later than 210 days after the end of the plan year in which the change is adopted to each participant, and to each beneficiary who is receiving benefits under the plan.' " *Id.* (quoting 29 U.S.C. § 1024(b)(1)). The Department of Labor further addresses the notice requirements in a regulation which "provides that a plan administrator must notify participants and beneficiaries of material reductions in covered services or benefits by using measures reasonably calculated to

ensure actual receipt of the material by the plan participants." *Id.* Therefore, the language used in the SPD is irrelevant to this issue as CIGNA was not required to issue a new SPD to its participants in order to comply with the requirements of Section 1024(b)(1).

CIGNA distributed several pieces of correspondence to its employees regarding the adoption of the cash balance plan and its changes, including the Rehire Rule, in order to comply with the above-listed requirements of Section 1024(b)(1). First, Depenbrock was sent a letter informing him that there would be changes to the Plan and more information would follow but that he would remain in Plan A "as one of a group of long-service employees." (Def.'s Mot. for Summ. J., Ex. N). Second, a Signature Benefits Newsletter was distributed to participants which summarized some of the upcoming changes but also alerted participants that the Signature Benefits Retirement Information Kit would follow in December 1997. (Def.'s Mot. for Summ. J., Ex. S). Then, in December 1997, the Signature Benefits Retirement Information Kit was distributed to all employees, including Depenbrock, in a sealed envelope that was individually addressed to each participant. As discussed previously, the Kit contained the following language regarding the new Rehire Rule: If you leave CIGNA companies and are reemployed after December 31, 1997, you will not participate in the Pension Plan when you return. Instead you will be eligible to participate in the new CIGNA Retirement Plan. (Def.'s Mot. for Summ. J., Ex. T).

The measures taken by CIGNA were in full compliance with the notice and disclosure requirements of ERISA. As evidenced by the aforementioned, the Rehire Rule was clearly explained when CIGNA disseminated the above information to

each of its individual participants in a timely fashion. Accordingly, I will enter summary judgment in favor of CIGNA on Counts Two and Three.

### C. Right to Review Documents

Depenbrock has apparently decided to dismiss Count Four as he has failed to respond to CIGNA's argument on this claim. Further, there is no authority cited by Depenbrock to support a claim for failure to produce documents against CIGNA. Accordingly, since there are no issues of fact in dispute, I will enter summary judgment in favor of CIGNA on Count Four of Plaintiff's Complaint.

### D. Breach of Fiduciary Duty

█ Count Five of Depenbrock's Complaint is substantially similar to Count One, his wrongful denial of benefits claim in which Depenbrock alleges that CIGNA breached its fiduciary duty to him in violation of ERISA Section 404, 29 U.S.C. § 1104, when CIGNA wrongfully applied the new Rehire Rule to him upon his return to CIGNA. Depenbrock does not cite any authority which would permit him to recover in such an action. Further, "[t]here are no reported cases in which a plan beneficiary was permitted to maintain a § 1132(a)(3) claim for an alleged erroneous denial of benefits." *Blahuta–Glover v. Cyanamid Long Term Disability Plan,* 1996 WL 220977, at *5 (E.D.Pa. April 30, 1996). Therefore, since " § 1132(a)(1)(B) (a wrongful denial of benefits claim which Depenbrock alleges in Count One) provides an adequate remedy, a claim for equitable relief for an alleged simple wrongful denial of benefits cannot be maintained under § 1132(a)(3)." *Id.* Accordingly summary judgment will be entered in favor of CIGNA on Count Five.

### IV. CONCLUSION

For all the foregoing reasons, I will enter summary judgment in favor of CIGNA on Counts One, Two, Three, Four and Five of Depenbrock's Complaint.

An appropriate Order follows.

### ORDER

AND NOW, this 31st day of July, 2003, after a hearing held in this Court on May 22, 2003, and upon consideration of the Motion filed by Defendant CIGNA, for Summary Judgment as well as the Cross–Motion for Summary Judgement filed by Plaintiff, John Depenbrock, and any Responses thereto, it is hereby **ORDERED** that:

1. Plaintiff's Cross–Motion for Summary Judgment is **DENIED**; and

2. Defendant's Motion for Summary Judgment is **GRANTED**, the Complaint is **DISMISSED WITH PREJUDICE** and the Clerk of Court is hereby directed to mark this case as **CLOSED**.